**2024-1945**

# United States Court of Appeals for the Federal Circuit

**GOOGLE LLC,**

*Appellant*

***v.***

**VALTRUS INNOVATIONS LTD.**,

*Appellee*

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Case No. IPR2022-01545

## NON-CONFIDENTIAL RESPONSE BRIEF OF APPELLEE VALTRUS INNOVATIONS LTD.

Jason Sheasby
Hong Annita Zhong
Amy E. Proctor
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Phone: 310.277.1010

Philip Warrick
IRELL & MANELLA LLP
750 17th Street NW, Suite 850
Washington, DC 20006
202.777.6500

Jonathan M. Lindsay
IRELL & MANELLA LLP
840 Newport Center Dr., Suite 400
Newport Beach, CA 92660
Phone: 949.760.0991

*Attorneys for Appellee*
*Valtrus Innovations Ltd.*

## EXEMPLARY PATENT CLAIM AT ISSUE

**Claim 1**: A method of merging result lists from multiple search engines, said method comprising:

transmitting a query to a set of search engines;

receiving in response to said query a result list from each search engine of said set of search engines, each result list including one or more entries;

selecting a subset of entries from each result list to form a set of selected entries;

assigning to each selected entry of said set of selected entries a scoring value according to a scoring function;

assigning to each subset a representative value according to the scoring values assigned to its entries; and

producing a merged list of entries in a predetermined manner based on the representative value assigned to each result list,

wherein the representative value varies in accordance with predetermined manner.

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2024-1945

**Short Case Caption** Google LLC v. Valtrus Innovations Ltd.

**Filing Party/Entity** Valtrus Innovations Ltd.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/16/2025

Signature: /s/ Jonathan M. Lindsay

Name: Jonathan M. Lindsay

FORM 9. Certificate of Interest

Form 9 (p. 2)
March 2023

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☐ None/Not Applicable |
| Valtrus Innovations Ltd. | Valinvest LLC | Key Patent Innovations Limited |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ... 1

INTRODUCTION ... 1

STATEMENT OF THE ISSUES ... 4

STATEMENT OF THE CASE ... 5

I. The ’704 Patent ... 5

II. The District Court Litigation ... 6

III. The IPR Proceeding ... 7

A. Google’s IPR Petition ... 7

B. Valtrus’ Evidence Supporting Prior Conception and Reasonably Continuous Diligence ... 8

C. Final Written Decision ... 15

SUMMARY OF THE ARGUMENT ... 18

STANDARD OF REVIEW ... 23

ARGUMENT ... 24

I. Substantial Evidence Supports the Board’s Finding of Reasonably Continuous Diligence in Constructively Reducing the Invention of the ’704 Patent to Practice ... 24

A. The Board Applied the Correct Legal Standard for Diligence. ... 24

B. Google Does Not Meaningfully Dispute the Document Date Evidence From the Prosecution History on Which the Board Reasonably Relied. ... 26

C. Google’s “Three-Week Gap” Framing Ignores Significant and Undisputed Evidence of Activity and Diligence. ... 28

**Page**


D. Substantial Evidence Demonstrates Reasonably Continuous Diligence, Not Abandonment or Unreasonable Delay. .......... 32

II. Substantial Evidence Supports the Board's Conception Findings. .......... 40

A. The Disclosure Documents and Their Metadata Provide Substantial Evidence of Conception and Do Not Require Further Corroboration. .......... 41

B. The Document Metadata Provides Independent Corroboration. .......... 44

C. Google's Reliance on *Apator* Is Misplaced. .......... 53

D. The Record Contains Significant Additional Corroborating Evidence. .......... 56

III. Valtrus Satisfied Its Burden of Production, and Google Failed to Establish Otherwise. .......... 58

CONCLUSION AND RELIEF SOUGHT .......... 61

CERTIFICATE OF COMPLIANCE .......... 62


**CONFIDENTIAL MATERIAL OMITTED**

The material redacted on pages 8-10, 13, 15-17, 48-49, and 54-55 of this brief is subject to the Board's Protective Order issued in IPR2022-01545. Redacted material on pages 8, 9, 15, 16, 49, and 54 identifies certain individual whose identity was identified only in documents sealed in IPR2022-01545. Redacted material on pages 8, 9, 15-16, and 49 also contains certain dates which were contained only in documents sealed in IPR2022-01545. Redacted material on pages 10, 13, 48, and 55 contains certain dates which were contained only in documents sealed in IPR2022-01545.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apator Miitors APS v. Kamstrup A/S*,
887 F.3d 1293 (Fed. Cir. 2018) ....................16, 53, 56

*Arctic Cat Inc. v. GEP Power Prods., Inc.*,
919 F.3d 1320 (Fed. Cir. 2019) ....................*passim*

*ATI Techs. ULC v. Iancu*,
920 F.3d 1362 (Fed. Cir. 2019) ....................24, 52

*Brown v. Barbacid*,
436 F.3d 1376 (Fed. Cir. 2006) ....................*passim*

*D'Amico v. Koike*,
347 F.2d 867 (CCPA 1965) ....................36

*Dana-Farber Cancer Inst., Inc. v. Ono Pharma. Co.*,
379 F. Supp. 3d 53 (D. Mass. 2019) ....................52

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*,
800 F.3d 1375 (Fed. Cir. 2015) ....................23, 58, 59

*E.I. du Pont De Nemours & Company v. Unifrax I LLC*,
921 F.3d 1060 (Fed. Cir. 2019) ....................21, 24, 44

*Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*,
881 F.3d 1354 (Fed. Cir. 2018) ....................24

*EMC Corporation v. Pure Storage, Inc.*,
204 F. Supp. 3d 749 (D. Del. 2016) ....................50

*Flexiworld Techs.*,
IPR2022-00775, Paper 41 (PTAB Nov. 1, 2023) ....................52

*Gould v. Schawlow*,
363 F.2d 908 (CCPA 1966) ....................39, 40

*Kenexa Brassring, Inc. v. Taleo Corp.*,
751 F. Supp. 2d 735 (D. Del. 2010) ....................50, 51

*Kolcraft Enterprises, Inc. v. Graco Children's Products, Inc.*,
927 F.3d 1320 (Fed. Cir. 2019) ....................55, 56

*Kridl v. McCormick*,
105 F.3d 1446 (Fed. Cir. 1997) ....................46, 48

*Lazare Kaplan Int'l v. Photoscribe Techs., Inc.*,
628 F.3d 1359 (Fed. Cir. 2010) ....................45

*Mahurkar v. C.R. Bard*, *Inc.*,
79 F.3d 1572 (Fed. Cir. 1996) ....................*passim*

*In re Marquez*,
738 F. App'x 1012 (Fed. Cir. 2018) ....................30, 33

*Medichem, S.A. v. Rolabo, S.L.*,
437 F.3d 1157 (Fed. Cir. 2006) ....................45, 46

*Medtronic, Inc. v. Teleflex Innovations S.À.R.L.*,
68 F.4th 1298 (2023) ....................59

*In re Meyer Mfg. Corp.*,
411 F. App'x 316 (2010) ....................39

*Mosaic Brands, Inc. v. Ridge Wallet LLC*,
55 F.4th 1354 (2022) ....................46, 55

*In re Mulder*,
716 F.2d 1542 (Fed. Cir. 1983) ....................37, 38, 39

*NFC Technology, LLC v. Matal*,
871 F.3d 1367 (Fed. Cir. 2017) ....................44, 45

*In re Nuvasive, Inc.*,
842 F.3d 1376 (Fed. Cir. 2016) ....................31, 33

*Perfect Surgical Techs., Inc., v. Olympus Am., Inc.*,
841 F.3d 1004 (Fed. Cir. 2016) ....................*passim*

*Price v. Symsek*,
988 F.2d 1187 (Fed. Cir. 1993) ....................*passim*

*REG Synthetic Fuels, LLC v. Neste Oil Oyj*,
841 F.3d 954 (Fed. Cir. 2016) ....................44

*Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*,
264 F.3d 1344 (2001) ........................................................................ 42

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) ..................................................... 41, 43

*Tech. Licensing Corp. v. Videotek, Inc.*,
545 F.3d 1316 (Fed. Cir. 2008) .......................................................... 58

*Tracktime, LLC v. Amazon.com Servs. LLC*,
No. 18-1518, 2024 WL 4300101 (D. Del. Sept. 26, 2024) ............... 51, 52

*Transocean Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp.*,
443 F. Supp. 2d 836 (S.D. Tex. 2006) ................................................ 51

*United States v. Washington*,
498 F.3d 225 (4th Cir. 2007) ............................................................ 47

*Valtrus Innovations Ltd. v. Google LLC*,
No. 3-22-cv-00066 (N.D. Tex.) ........................................................ 1, 7

*Valtrus Innovations Ltd. v. Google LLC*,
No. 3-24-cv-01795 (N.D. Tex.) ............................................................ 1

*Yorkey v. Diab*,
601 F.3d 1279 (Fed. Cir. 2010) .......................................................... 24

**Statutes**

35 U.S.C. § 102(e) ..................................................................... 15, 16

**Rules**

37 C.F.R. § 1.131 ............................................................................ 37

Rule 131 ..................................................................................... 37, 38

## STATEMENT OF RELATED CASES

Appellee Valtrus Innovations Ltd. ("Valtrus") identifies the following pending case involving U.S. Patent No. 6,728,704 ("the '704 patent") that may directly affect or be directly affected by a decision in this appeal: *Valtrus Innovations Ltd. v. Google LLC*, No. 3-22-cv-00066 (N.D. Tex.) ("*Valtrus I*"). This district court case had been stayed pending IPR, but the stay was lifted on December 2, 2024.

During pendency of this appeal, another entity challenged Valtrus' standing to assert patents in its own portfolio. Because *Valtrus I* had been stayed at the time, out of an abundance of caution and to preserve all rights, Valtrus filed a second complaint asserting the '704 patent against Google, along with additional patents. This second case is captioned *Valtrus Innovations Ltd. v. Google LLC*, No. 3-24-cv-01795 (N.D. Tex.).

## INTRODUCTION

Google brings a narrow and fact-bound appeal to this Court. Google asks the Court to overturn two fact-findings underpinning the Board's conclusion that Valtrus successfully antedated Google's lead prior-art reference (Bushee), which was filed only a month before the application leading to the challenged '704 patent. Specifically, Google contends that the Board's findings related to (1) the date of conception and (2) the inventors' reasonably continuous diligence in constructively reducing the invention to practice lack substantial evidence support. Google is

mistaken. Despite the fact that the ’704 patent issued from an application filed over two decades ago, Valtrus provided ample evidence of conception and diligence supporting the Board’s findings, which this Court should affirm.

With respect to conception, Valtrus provided invention disclosure documents authored by the inventors, and then authenticated by one of them, inventor Dr. Panayiotis Tsaparas (“Inventor Dr. Tsaparas”), who provided written and deposition testimony. These documents include reliable, independently generated metadata corroborating dates and authorship, and Valtrus’ expert, Dr. Cole, confirmed the metadata and identified support for each claim element of each claim of the ’704 patent in these documents. Google has never disputed that these documents adequately demonstrate possession of the claimed invention.

Instead, Google wrongly contends that Valtrus provided only uncorroborated inventor testimony. That is demonstrably false. The contemporaneous invention disclosure documents do not rely on Inventor Dr. Tsaparas’ testimony to demonstrate conception prior to Bushee’s filing date, and they are independently corroborated by document metadata, which is distinct from the file system metadata disparaged by Google and addressed in the cases it cites for support. This metadata was created and maintained inside the file itself by Microsoft Word and corroborates the creation date, authorship, last revision date, and identity of the last user to edit the document. There is no evidence that Inventor Dr. Tsaparas or anyone else could

have altered that information. Thus, substantial evidence supports the Board's decision to credit the earlier conception date.

On appeal, Google suggests that Valtrus should have provided the documents and metadata in their native form, but that is a red herring. Google never sought discovery of these native files, did not bring an authentication challenge, and chose not to question either Inventor Dr. Tsaparas or Dr. Cole during their depositions regarding the authorship or metadata of these documents—an odd choice if Google was indeed concerned about authenticity and reliability of the information. Google did challenge the documents on other evidentiary grounds, which the Board rejected. Google has not alleged that the Board abused its discretion in that regard.

Google's diligence challenge is similarly tenuous. Google attempts to sidestep the fact that the inventors diligently reviewed, signed, and returned the patent application to their law firm, which finalized and filed it, all of which took place within the five-week critical period. Instead, Google focuses on a period it describes as a "three-week gap," contending that Valtrus failed to explain the alleged "gap" in activity. But the alleged "gap" is at most 11 business days and activities necessarily took place during that time. And, as Valtrus' expert, Dr. Cole, explained, the inventors and their firm acted well within a reasonable timeline.

Google's arguments rest on an unduly restrictive view of diligence at odds with this Court's precedent. Diligence does not require uninterrupted work towards

reduction to practice. Rather, the purpose of the diligence analysis is to confirm that, "in light of the evidence as a whole, 'the invention was not abandoned or unreasonably delayed.'" *Perfect Surgical Techs., Inc., v. Olympus Am., Inc.*, 841 F.3d 1004, 1009 (Fed. Cir. 2016) (quoting *Brown v. Barbacid*, 436 F.3d 1376, 1379 (Fed. Cir. 2006)). Google asks this Court to second-guess the Board's factual finding that a handful of business days between the last inventor declaration signature and the application's filing date do not evidence delay or abandonment of the invention. *See* Appx22. Google also ignores the fact that the law firm had to wait for delivery of a signed inventor declaration for an inventor living outside the United States. In view of the small number of business days at issue and the number of tasks the law firm had to perform to finalize and file the application, substantial evidence supports the Board's finding of reasonably continuous diligence and no abandonment or unreasonable delay. Accordingly, Valtrus respectfully asks the Court to affirm.

## STATEMENT OF THE ISSUES

1. Whether substantial evidence supports the Board's finding that the inventors exercised reasonably continuous diligence in reducing the invention to practice where the inventors did not abandon or unreasonably delay the filing of the application, but rather diligently completed all inventor tasks necessary for filing—a fact not in dispute—and then returned the application to a law firm, which

processed, finalized and filed the application and related papers within a reasonable period of time.

2. Whether substantial evidence supports the Board's finding that the claimed invention was conceived prior to Bushee's filing date where that finding is based on properly authenticated invention disclosure documents, which Google does not dispute evidence full conception of every claim limitation, along with independently generated document metadata corroborating inventor testimony about the timing and authorship of the invention disclosure documents.

## STATEMENT OF THE CASE

### I. The '704 Patent

The application from which the '704 patent issued was filed on August 27, 2001, by Verity, Inc. ("Verity"). Appx45. The '704 patent relates to search engine technology, and more specifically to "reducing the computational overhead associated with merging results from multiple search engines." Appx50 (1:7-10). The invention of the '704 patent "allows for a reduction in computational overhead when merging and re-ranking multiple result lists." Appx51 (3:20-21). As the '704 patent explains, this "improve[s] the speed and efficiency with which useful information could be brought to people, thus reducing the tedium associated with many different tasks." Appx50 (2:60-63).

The four inventors named on the ’704 patent, Jianchang Mao, Rajat Mukherjee, Prabhakar Raghavan, and Panayiotis Tsaparas (Appx45), were pioneers in the field of search engine technology, and parlayed their innovations and successes at Verity into thriving careers at some of the largest tech companies in the world. For example, Jianchang Mao rose to the position of Vice President of Google Assistant Engineering after more than a decade of experience at other search engine giants, including Microsoft and Yahoo!. Appx763; Appx766. Inventor Raghavan is currently “Senior Vice President at Google” and “is responsible for Google Search, Assistant, Geo, Ads, Commerce and Payments products.” Appx777. According to Google, he “is one of the foremost authorities on search and is the co-author of two widely-used graduate texts on algorithms and on search” and has “published over 100 papers in various fields, and holds 20 issued patents.” *Id*. “Prior to joining Google, Prabhakar founded and led Yahoo! Labs where he was responsible for search and ad ranking, as well as ad marketplace design, and later served as the company’s Chief Strategy Officer.” *Id*. And Inventor Dr. Tsaparas has been a professor in the Department of Computer Science at the University of Ioannian in Greece for more than a decade. Appx838.

## II. The District Court Litigation

In January 2022, Valtrus sued Google for willful infringement of six patents in the Northern District of Texas. Valtrus alleged, among other things, that Google

Search practices the invention claimed in the ’704 patent. Google then filed five IPR petitions, including one challenging all 23 claims of the ’704 patent. The district court subsequently issued a stay pending the IPR proceedings, which it recently lifted. *See Valtrus I*, No. 3:22-cv-00066, Dkt. 203 (Order) (N.D. Tex. Dec. 2, 2024).

## III. The IPR Proceeding

### A. Google’s IPR Petition

Google’s IPR petition set forth four grounds, each of which relied on U.S. Patent No. 6,711,569 (“Bushee”), the prior art reference at issue in this appeal. *See* Appx161. Under the first ground, Google challenged the independent claims (and many dependent claims) of the ’704 patent as obvious over Bushee as the primary reference, in view of U.S. Patent No. 5,864,846 (“Voorhees”) as a secondary reference. *See id*. Under the third ground, which likewise challenged the independent claims (and many dependent claims), Google flipped the references from the first ground, with Voorhees being the primary reference and Bushee being a secondary reference, along with an additional secondary reference, U.S. Patent No. 6,385,602 (“Tso”). *See id*.[1]

[1] In the second and fourth grounds, Google challenged only certain dependent claims based on combinations including Bushee, Voorhees, and one or more additional secondary references.

### B. Valtrus' Evidence Supporting Prior Conception and Reasonably Continuous Diligence

Valtrus provided evidence establishing that the inventors of the '704 patent conceived of the invention before Bushee was filed, and worked diligently to reduce it to practice, both as an actual product and also by filing the application for the '704 patent on August 27, 2001.

1. Prior Conception

Valtrus provided evidence that the inventors of the '704 patent conceived the claimed invention no later than Date [redacted], well before Bushee's priority date of July 24, 2001.[2] Appx346. For example, Valtrus submitted two versions of an invention disclosure (Appx2560-2566, Appx6268-6274) ("the Disclosure Documents"), which were attached to Inventor Dr. Tsaparas' declaration[3] and which were last edited by Person's Identity [redacted] on Date [redacted]. Appx6260; Appx6265; Appx6267; Appx2450 (¶41). The Disclosure Documents list Individuals' Identity [redacted] as authors (Appx6268, Appx6272), and Inventor Dr. Tsaparas testified that he "believe[s] that

---

[2] Google has not argued that Bushee is entitled to an earlier date or that the concepts discussed in Bushee were publicly known prior to Bushee's filing date.

[3] The Board accepted a corrected exhibit (EX2069 (Appx6259-6274)) for Inventor Dr. Tsaparas' declaration, correcting the penalty of perjury statement in his original declaration (EX2051 (Appx2551-2566)), but the two exhibits are otherwise identical. Appx13 (n.4). For ease of reference, citations will be made to the corrected exhibit.

CONFIDENTIAL MATERIAL OMITTED

one or more of the other named inventors on the '704 patent authored the original version of the documents[.]" Appx2553 (¶6).

As Inventor Dr. Tsaparas testified, he "was employed by Verity, Inc. as an intern from February 2, 2001 to approximately the end of May, 2001." Appx6260 (¶1); Appx3606 (9:20-23). He "conducted a search of [his] records for documents related to the'704 patent," and located the Disclosure Documents in a password-protected "student account" of his that was active during his internship with Verity and was still being hosted by the University of Toronto. Appx6260 (¶¶2-3); Appx3615 (18:21-24). He also testified no one at Verity could have accessed this account. Appx3608-3609 (11:11-12:12); Appx3613 (16:6-15); Appx3615-3616 (18:21-19:6).

Inventor Dr. Tsaparas further testified about the documents' metadata and how he created screenshots of the information using the file properties from Microsoft Word. Appx6260 (¶4); Appx6265. The metadata shows that [redacted] Person's Identity originally created the documents on [redacted] Date, and that [redacted] Person's Identity revised the documents no later than [redacted] Date. Appx2450 (¶41) (citing Appx2552, Appx2557, corresponding to Appx6260, Appx6265). Google deposed Inventor Dr. Tsaparas but chose not to pose a single question regarding the authorship or metadata of the Disclosure Documents. *See* Appx16.

Valtrus also submitted evidence from an expert, Dr. Cole, who testified about the metadata establishing the dates and authorship of the Disclosure Documents. Appx2450 (¶41). His testimony, along with additional evidence provided by Valtrus, demonstrated that, unlike *file system* metadata criticized by Google, *document* metadata is stored within the document itself and is reliable. Appx6064-6066; Appx6161-6163 (87:25-88:15, 89:10-21); Appx2450 (¶41).

The Disclosure Documents demonstrate that the inventors conceived the invention recited in claims 1-23 no later than Date [redacted]. Dr. Cole prepared and submitted a claim chart detailing how the documents evidence disclosure of each limitation. Appx2450-2485 (¶42); *see also* Appx2485-2491 (¶¶43-52). Based on his analysis, Dr. Cole concluded that the Disclosure Documents "***alone*** demonstrate[] the inventors of the '704 patent had conceived and were in possession of the invention recited in all of the claims no later than Date [redacted]." Appx2491-2492 (¶53).[4] Google did not dispute Dr. Cole's conclusion that the Disclosure Documents demonstrate the inventors' possession of each limitation of each challenged claim of the '704 patent. *See* Appx16.

Dr. Cole's claim chart also included an "Additional Evidence" column citing additional evidence on a limitation-by-limitation basis. All of this additional

[4] Emphasis added throughout unless otherwise indicated.

evidence is of record in the IPR, and as Dr. Cole stated in his declaration, it "further established" the fact that the Disclosure Documents demonstrate prior conception. Appx2491-2492 (¶53).

This "Additional Evidence" included Verity press releases and other Verity public documents. Appx2450-2485 (¶42). These documents discuss Verity software in early 2001, which is described as "allow[ing] brokered searches across multiple servers and multiple CPUs to provide the most relevant search results from many information sources without sacrificing the speed or accuracy of the results displayed." Appx813. Verity's award winning software "is a highly scalable knowledge retrieval solution that allows corporate or ecommerce portals to search across multiple remote servers and CPUs. Thousands of users retrieve results from hundreds of millions of information sources quickly and with high accuracy." Appx803.

Valtrus also provided evidence that the applicant had a complete product on the market no later than August 2001. For example, Verity K2 product literature created in 2001 indicates that:

> Verity's federated search returns merged and ranked results from multiple information sources. For example, a clinical researcher in a pharmaceutical company could submit one query for 'penicillin allergies' and receive results from the company's Verity-powered intranet, Hoover's Online, Factiva, Google and other information sources. Duplicate results are automatically eliminated, and the list can be sorted for relevancy or re-ranked by source and category.

Appx1436; *see also* Appx2378 (noting document property tag of original exhibit shows document created on Nov. 8, 2001); Appx818 ("Using Verity's federated search, a single query can bring back results from multiple search sites information sources. Results are merged, sorted by relevancy and duplicate hits eliminated." (archive of Aug. 1, 2001)). Valtrus also submitted additional documentary evidence demonstrating both conception and reduction to practice of various claim elements before Bushee. *See* Appx6174-6179 (100:14-101:8, 101:18-102:4, 103:1-104:2, 105:14-19) (confirming February 2001 dates for Verity K2 products (Appx6200, Appx6201, Appx6202, Appx6204) using the same K2 architecture).

The "Additional Evidence" column cited numerous additional documents describing Verity's product features, such as an article written in 2001 about Verity having introduced the "K2 Enterprise platform" with "a federated search capability" that enables "cross-repository investigation" and ranking search results from multiple sources." Appx2450-2485 (¶42); Appx1063; Appx1223 (a 2002 Delphi Group Assessment of Verity's products, stating that "[i]n the Delphi report Market Analysis: Portal Software Leaders, released in May 2001, Verity was the market leader in the portal infrastructure software category"); Appx1276; Appx1292; Appx1343-1344; Appx1357 (Sybase User Guide from May 2001 describing Verity document scoring and related features) (cited at Appx2450-2485 (¶42))).

Dr. Cole's "Additional Evidence" column cited deposition testimony from two individuals who were Verity employees during the relevant timeframe, Michel Tourn and Mani Abrol. Appx2492-2493 (¶54). The employees agreed that the 2001 press releases cited by Valtrus confirmed that the Verity® K2 Catalog and Verity® K2 Enterprise products were available on the market before Bushee's filing date of July 24, 2001. *See id.* The employees' testimony also described various features from the '704 patent that were made available by Verity in and around the relevant timeframe. *See id.* Valtrus also submitted evidence from Dr. Barr, who reviewed Verity source code that was in existence in Date [redacted]. Appx2543-2544 (¶¶3-5). Dr. Barr's analysis indicated that the source code provided the functionality of at least claim 1 of the '704 patent by Date [redacted]. Appx2546-2548 (¶¶13-14).

2. Diligent Reduction to Practice

Valtrus established reasonably continuous diligence during the five-week critical period from Bushee's priority date of July 24, 2001 to the filing date of the '704 patent only five weeks later on August 27, 2001. For example, Valtrus identified document date information showing that the law firm of Cooley Godward LLP ("Cooley") had been working on drafts of the patent application papers on or after June 25, 2001, because various application papers bear the notation of "Rev 06/25/2001." Appx2494-2495 (¶55); Appx376-378; Appx402-403.

The actual application, as filed, bears a document date stamp of July 30, 2001. Appx394; Appx2494-2495 (¶55). This is consistent with the fact that two of the inventors signed the inventor declaration on August 3, 2001, attesting, under penalty of perjury, that the application had been "attached hereto and bears the attorney docket no. VRTY-004/00US," and that they had "reviewed and understand the contents of the above-identified specification, including the claims." Appx398-401. The first page of the application, as filed, bears the same attorney docket number of VRTY-004/00US. Appx379. The other two inventors, Rajat Mukherjee and Panayiotis Tsaparas (living in Canada at time), signed the declaration on August 6, 2001 and August 8, 2001, respectively. Appx399-401. Dr. Cole reviewed this evidence and concluded that "the applicant exercised diligence in preparing and filing the patent application issued as the '704 patent." Appx2494-2495 (¶55). Contrary to arguments made by Google, Dr. Cole testified that he had specific experience in this regard. *See* Appx3293-3294 (96:20-97:3) (testifying that he "had patent applications that began the patent prosecution process"). Dr. Cole opined that reasonably continuous diligence had been exercised, "particularly in view of [his] experience that it is typical for the patent application drafting process to take law firms on the order of several weeks or more to complete between the time it is provided with an invention disclosure by the applicant to the time when a final application is ready for filing." Appx2494-2495 (¶55).

Likewise, in the period of time leading up to the critical period, the inventors and Cooley were diligently engaged in the process of drafting a full patent specification, complete with over 20 claims and several hand-drawn figures (*compare* Appx6268-6274, *with* Appx379-397), all of which they completed within the time period that Dr. Cole's uncontested testimony indicated was reasonable. Appx2494-2495 (¶55).

### C. Final Written Decision

After weighing this evidence within the proper legal framework, the Board correctly found that "the record shows that in light of the evidence as a whole, the invention was not abandoned or unreasonably delayed," and that Valtrus had "established a date of invention of the challenged claims before Bushee's filing date, [and] demonstrated diligence from just prior to Bushee's filing date until a constructive reduction to practice on August 27, 2001." Appx22 (internal citations omitted). The Board therefore concluded that "Bushee is not prior art under 35 U.S.C. § 102(e)." *Id.*

In analyzing conception, the Board properly found Inventor Dr. Tsaparas' testimony of when he worked for Verity "uncontroverted, as is his testimony that another Person's Identity [redacted] originally created the Disclosure Documents, that [redacted] Person's Identity [redacted] made additions to the documents, and that the documents were not altered after Date [redacted]." Appx17 (citing Appx6261-6262 (¶¶5-6)). Applying a rule of

reason analysis, the Board found this testimony corroborated by "the Disclosure Documents and the metadata for the documents, which indicates that Person's Identity [redacted] created the document in Date [redacted] and that Person's Identity [redacted] made edits until Date [redacted]." Appx17 (citing Appx6261 (¶4); Appx2450 (¶41)). The Board also noted that "Petitioner cross-examined Dr. Tsaparas and did not question Dr. Tsaparas' authorship of the documents or the document metadata." Appx17. The Board distinguished the *Apator* case cited by Google, noting that in that case, "the inventor testified that he had attached documents with drawings demonstrating the invention" to two emails, but those emails "did not actually show that any documents were attached." Appx18 (citing *Apator Miitors APS v. Kamstrup A/S*, 887 F.3d 1293, 1296 (Fed. Cir. 2018)). The Board correctly reasoned that here "[t]he metadata and the documents themselves were provided with Dr. Tsaparas' declaration as separate corroboration of his testimony regarding the timing of the creation and editing of the documents and his activity for Verity, Inc." *Id*.

The Board also properly considered the testimony of Valtrus' expert, Dr. Cole, regarding the content of the Disclosure Documents. The Board credited "Dr. Cole's analysis of the support for each of the claim elements of each claim in the '704 patent in the Disclosure Documents." *Id*. (citing Appx2450-2485 (¶42)); *see also* Appx18-20. The Board therefore found that "the preponderance of evidence

Date

shows that the conception date for all the challenged claims is on or earlier than [redacted]." Appx20.

In analyzing diligence, the Board properly considered the written and deposition testimony of Inventor Dr. Tsaparas, written and deposition testimony of Valtrus' expert Dr. Cole about the typical length of time it takes to prepare and file patent applications, and numerous supporting documents contemporaneous with the critical period for diligence. Appx20-22. Citing this Court's decisions in *Arctic Cat* and *Perfect Surgical*, the Board found no abandonment or unreasonably delay. Appx21-22. The Board viewed Google's arguments to the contrary as "an attempt 'to scour the patent owner's corroborating evidence in search of intervals of time where the patent owner has failed to substantiate some sort of activity.'" Appx22 (quoting *Perfect Surgical*, 841 F.3d at 1009). The Board declined to address the "Additional Evidence" provided by Valtrus and described by Dr. Cole. Appx14 (n.5) (stating that this additional evidence "would prove actual reduction to practice," and declining to consider it because "we do not base our decision … on this asserted reduction to practice"). Even without this additional evidence, which further supported *constructive* reduction to practice, the Board found that the "patent application was drafted and finalized and the inventors signed their declarations by August 8, 2001" and declined to "infer abandonment or unreasonable delay from the timeline established here." *Id.*

The Board correctly observed that "[a]ll instituted grounds of unpatentability rely at least in part on Bushee," but because "Petitioner asserts that the subject matter at issue is "taught redundantly by both Bushee and Tso," the Board addressed Google's unpatentability arguments regarding the combination of Voorhees and Tso set forth in grounds 3 and 4. Appx22-23. The Board found that Google failed to show that any challenged claim was unpatentable based on the combination of Voorhees and Tso. Appx32.

## SUMMARY OF THE ARGUMENT

Google presents narrow arguments on appeal that fall well short of the substantial evidence burden for overturning the Board's factual findings. For example, Google does not dispute that the invention disclosure documents evidence possession of the claimed invention. Instead, Google asks the Court to second-guess the Board based on speculative arguments regarding the origins of these documents, despite corroboration by reliable and independent document metadata, as well as sworn inventor testimony. Similarly, Google does not challenge Valtrus' evidence that during the critical period the inventors diligently reviewed, signed, and returned the patent application for finalization and filing by the Cooley law firm. Rather, Google contends that the inventors abandoned or unreasonably delayed the invention when they handed off the application to a law firm to complete the filing process,

which the law firm completed in a handful of business days after receiving the last inventor declaration signature.

Substantial evidence supports the Board's finding of reasonably continuous diligence, including evidence that Google does not dispute. For example, Google does not dispute evidence from the prosecution history establishing that—during the short critical period—the law firm provided a draft of the patent application, which the inventors reviewed, signed, and returned to the law firm for processing, finalization, and filing in the normal course. By limiting its challenge to the three-week period of August 8, 2001 to August 27, 2001 (Blue Brief ("BBr.") 34), Google does not even attempt to argue that the inventors abandoned or unreasonably delayed the invention during the portion of the critical period in which they were actively engaged in the constructive reduction to practice process.

Instead, Google improperly scoured Valtrus' evidence in search of a period of alleged inactivity. *See Perfect Surgical*, 841 F.3d at 1009. What Google unearthed was an alleged "three-week gap" (which actually is only 11 business days at most) after the inventors signed the application. Substantial evidence supports the Board's finding that this alleged "gap" does not reflect unreasonable delay. For example, the last signature on August 8, 2001, was from an inventor living in Canada at the time, who would have needed to send his signed declaration to the law firm (Cooley) located in the United States. *See* Appx401; Appx378. Evidence also demonstrates

that—during Google's alleged period of inactivity—significant activity occurred. For example, Cooley necessarily drafted the additional documents that it submitted with the patent application, including a non-publication request and various application transmittals. Appx376-378. Cooley also computed fees for the final number of excess claims and generated the physical check for those fees. *See id*. All of these activities occurred in less than 11 business days. The inventors and Cooley constructively reduced the application to practice well within a reasonable timeline, according to Dr. Cole's unrebutted testimony. Appx2494-2495 (¶55). Below is a graphic summarizing the diligence evidence and activities that necessarily occurred during between Bushee's filing date and application's filing date, including during the at most 11 business days of alleged inactivity after the last inventor signature:



Rather than address this evidence directly, Google implicitly advocates an unduly narrow view of diligence, despite acknowledging that "Valtrus need only to show that the named inventors exercised reasonably continuous diligence." BBr. 29; *see also Brown*, 436 F.3d at 1380 (requiring only "reasonably continuing activity"). Viewed within the proper legal framework, substantial evidence supports the Board's diligence finding.

Turning to conception, Google does not challenge the substance of the Disclosure Documents. Dr. Cole analyzed these documents and specifically identified where limitations of each challenged claim found support. Appx2450-2491 (¶¶42-52). Google does not dispute Dr. Cole's conclusions, upon which the Board expressly relied (Appx18-20). Rather, Google alleges that the Disclosure Documents and their metadata lack corroboration. This argument fails at the outset, because documentary evidence does not require corroboration. *See e.g., Mahurkar v. C.R. Bard*, *Inc.*, 79 F.3d 1572, 1577-78 (Fed. Cir. 1996). Google improperly conflates these documents with Inventor Dr. Tsaparas' testimony, which authenticated the Disclosure Documents and their metadata. Google did not challenge the authenticity of the Disclosure Documents or the metadata before the Board, nor does it (or can it) here.

Contrary to Google's contentions on appeal, corroborating evidence provided by an inventor can be independent. *See e.g.*, *E.I. du Pont De Nemours & Company*

*v. Unifrax I LLC*, 921 F.3d 1060, 1076 (Fed. Cir. 2019) ("*DuPont*") ("Documentary evidence, including a 2009 email sent by Dr. Kawka … corroborated Dr. Kawka's testimony."). While the metadata here was provided as an attachment to Inventor Dr. Tsaparas' declaration, it was independently generated by Microsoft Word. Appx6260; Appx6265; Appx6267; Appx6064-6065; Appx6161-6163 (87:25-88:15, 89:10-21). Therefore, the metadata stands on its own as evidence of authorship and the date of conception, and—together with the Disclosure Documents—corroborates Inventor Dr. Tsaparas' testimony.

There is no evidence that Inventor Dr. Tsaparas lacks credibility, and the Board properly considered his testimony under the rule of reason. *Price v. Symsek*, 988 F.2d 1187, 1195 (Fed. Cir. 1993). Any suggestion otherwise by Google rings hollow given that it deposed Inventor Dr. Tsaparas but chose not to ask about authorship or the metadata of the Disclosure Documents. *See* Appx17. Moreover, the metadata at issue is ***document*** metadata, which Microsoft Word generated and stored inside the file. Appx6161-6163 (87:25-88:15, 89:10-21); Appx6064-6065. Valtrus provided expert testimony and supporting evidence supporting that, unlike the ***file system*** metadata criticized by Google, ***document*** metadata is reliable. Appx6064-6066; Appx6161-6163 (87:25-88:15, 89:10-21); Appx2450 (¶41). Conversely, Google failed to introduce any evidence that this type of document metadata is unreliable. While Google suggests that Valtrus should have produced

native versions of the Disclosure Documents, Google omits that it failed to seek discovery of those native files, and that the Board denied Google's motion to exclude the Disclosure Documents. *See* Appx33-36. Google's speculative criticisms cannot undermine the substantial evidence supporting the Board's conception finding.

As such, substantial evidence supports the Board's factual findings that: (1) the inventors conceived the complete invention of the '704 patent prior to the Bushee reference, and (2) the applicant exercised reasonably continuous diligence during the critical period of just before July 24, 2001 (the filing date of Bushee) and August 27, 2001 (the filing date of the '704 patent). This Court should affirm.

## STANDARD OF REVIEW

Google mistakenly asserts that Valtrus bore the burden of proving an earlier date of invention than Bushee. BBr. 28. In an IPR, the burden of persuasion on invalidity rests on the petitioner and never shifts to the patent owner. *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015). When Google came forward with Bushee, the burden of production temporarily shifted to Valtrus. *Id*. at 1378-80. Once Valtrus met that burden, however, Google bore the ultimate burden of persuasion to establish that Bushee qualifies as prior art. *Id*.; *see also Mahurkar*, 79 F.3d at 1577.

This Court reviews the Board's factual findings "related to priority, conception, and reduction to practice, including whether the evidence sufficiently

corroborates inventor testimony, for substantial evidence." *DuPont*, 921 F.3d at 1075. If "two inconsistent conclusions may reasonably be drawn from the evidence in record, [the PTAB]'s decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*, 881 F.3d 1354, 1356 (Fed. Cir. 2018) (cleaned up). In addition, this Court "defer[s] to the Board's findings concerning the credibility of expert witnesses." *Yorkey v. Diab*, 601 F.3d 1279, 1284 (Fed. Cir. 2010).

## ARGUMENT

### I. Substantial Evidence Supports the Board's Finding of Reasonably Continuous Diligence in Constructively Reducing the Invention of the '704 Patent to Practice.

#### A. The Board Applied the Correct Legal Standard for Diligence.

The Board properly adhered to this Court's guidance that "the point of the diligence analysis is not to scour the patent owner's corroborating evidence in search of intervals of time where the patent owner has failed to substantiate some sort of activity," but rather, to determine whether "in light of the evidence as a whole, 'the invention was not abandoned or unreasonably delayed.'" *Perfect Surgical*, 841 F.3d at 1009 (quoting *Brown*, 436 F.3d at 1379). No specific kind of activity is required to make a showing of reasonable diligence. The diligence requirement is one of "reasonable[ness] under the circumstances of the particular case in question." *ATI*

*Techs. ULC v. Iancu*, 920 F.3d 1362, 1374 (Fed. Cir. 2019) (citation omitted). "The basic inquiry is whether, on all of the evidence, there was reasonably continuing activity to reduce the invention to practice." *Brown*, 436 F.3d at 1380. The critical period for diligence "begins just prior to the competing reference's effective date and ends on the date of the invention's reduction to practice." *Perfect Surgical*, 841 F.3d at 1007.

This Court has rejected the notion that a "*continuous* exercise of reasonable diligence" is required. *Id*. at 1008 (emphasis in original, internal citation omitted). Diligence "need not be perfectly continuous--only *reasonably* continuous." *Arctic Cat Inc. v. GEP Power Prods., Inc.*, 919 F.3d 1320, 1331 (Fed. Cir. 2019) (emphasis in original). An inventor is not required to work on reducing an invention to practice every day during the critical period. *Perfect Surgical*, 841 F.3d at 1009. "[D]iligence and its corroboration may be shown by a variety of activities." *Brown*, 436 F.3d at 1380. Direct evidence is not required. *Id*. Rather, the rule of reason approach applies to the corroboration requirement for diligence. *Mahurkar*, 79 F.3d at 1577; *see also Price*, 988 F.2d at 1196 ("all of the evidence put forth" must be considered "as a whole, not individually" in evaluating whether the inventor's testimony is credible). On appeal, Google advocates a rigid approach to analyzing diligence that cannot be reconciled with this flexible approach.

### B. Google Does Not Meaningfully Dispute the Document Date Evidence From the Prosecution History on Which the Board Reasonably Relied.

While Google appears to take some issue with the document timestamp evidence in the prosecution history that Valtrus argued in the IPR establishes a timeline of activity (*see* BBr. 30-32), it does not argue that the Board erred in relying on that timestamp evidence. This document date evidence consists of: document signature dates, document revision dates, and document creation dates.

First, the documents include handwritten signature dates next to signature lines indicating when the documents were signed. Second, document revision dates correspond to dates on which the law firm's standard forms were revised. The date is preceded by the abbreviation "Rev," and is found on the top left corner of several application forms in the file history, as Google acknowledges. BBr. 30-31; Appx376-378 ("Rev 06/25/2001"), Appx398-401 ("Rev 03/28/2001"), Appx402-403 ("Rev 06/26/2001"), Appx404 ("Rev 03/28/2001"), Appx416 ("Rev 06/26/2001").

Google does not appear to dispute that the revision dates represent dates on which the law firm's standard forms were revised. To the contrary, Google specifically conceded that "the 'Rev' dates appear to be dates on which Cooley revised its standard forms." Appx2990.

Third, the document date evidence also includes document *creation* dates found in the lower left corner of several application forms in the file history, as Dr. Cole explained. Appx2494-2495 (¶55) (citing the date stamp of July 30, 2001 on the as-filed patent application (Appx394)); *see also*, *e.g.*, Appx376-378 (showing a creation date of "082401" and signature date of "Aug 27, '01"), Appx403 (showing a creation date of "073001" and a signature date of "Aug 3, 2001"), Appx404 (showing a creation date of "082401" and a signature date of "Aug. 27, '01"), Appx416 ("showing a creation date of "031302" and a signature date of "March 13, '02"). Dr. Cole's testimony on this issue is uncontroverted—Google did not ask him about the document timestamps during his deposition, and Google did not submit a supplemental declaration from its expert or any other evidence contesting the meaning or accuracy of the timestamp evidence.

Google expressly "does not dispute the Board's finding that the law firm provided a draft of the patent application sometime between July 30, 2001 and August 3, 2001, when two named inventors signed an oath attesting that an application was attached to their oath." BBr. 34. Nor does Google dispute that "the inventors were engaged in the signing process between August 3, 2001 and August 8, 2001." *Id.*

Thus, the document date evidence from the prosecution history—i.e., revision dates, document creation dates, and document signature dates—constitutes

substantial evidence on which the Board reasonably relied in its analysis, concluding that the invention had not been abandoned or unreasonably delayed. Appx22.

### C. Google's "Three-Week Gap" Framing Ignores Significant and Undisputed Evidence of Activity and Diligence.

The critical period spans about a month, beginning with Bushee's filing date on July 24, 2001, and ending on August 27, 2001, with the filing of the application leading to the '704 patent. While Google insists that it did not "scour [Valtrus]'s corroborating evidence in search of intervals of time where [Valtrus] has failed to substantiate some sort of activity," *Perfect Surgical*, 841 F.3d at 1009; BBr. 35, that is precisely what it did here by focusing solely on an alleged period of inactivity from August 8 to August 27.[5] Specifically, Google alleges inactivity ***solely*** for these "nearly three weeks of the five-week critical period." BBr. 35. Google is wrong as explained below, but Google also cannot erase evidence of diligence throughout other portions of the critical period simply by conceding and then ignoring it. The Board properly considered "the evidence as a whole" to ensure "the invention was not abandoned or unreasonably delayed." *Perfect Surgical*, 841 F.3d at 1009.

For example, Google does not dispute that the inventors diligently reviewed and approved the patent application within a few days, after which they turned it over to the law firm (Cooley), to be finalized and filed in the normal course. As

---

[5] On page 37, the Blue Brief identifies a "critical period between August 8, 2021 and August 28, 2021," which appears to be a typographical error.

demonstrated to the Board, Cooley had been working on drafts of the patent application papers on or after June 25, 2001, because various application papers bear the notation of "Rev 06/25/2001." Appx2494-2495 (¶55); Appx376-378; Appx 402-403. The filed application bears a date stamp of July 30, 2001, which corresponds to the date the document was created. Appx394; Appx2494-2495 (¶55). This is consistent with the fact that two of the inventors signed the inventor declaration shortly thereafter on August 3, 2001, attesting, under penalty of perjury, that they had "reviewed and understand the contents of the above-identified specification, including the claims." Appx398-401. Thus, Cooley provided a draft of the application between July 30 (the date the application document was created) and August 3 (the earliest inventor declaration signature date). The other inventors then continued to review and approve the application between August 3 and August 8, which Google does not dispute. BBr. 34.

Indeed, Google does not even attempt to argue that the inventors abandoned or unreasonably delayed the invention during the portion of the critical period in which they were actively engaged in the constructive reduction to practice process (i.e., between July 24 and August 8, 2001). Instead, Google focuses its argument of alleged inactivity solely on the portion of the critical period ***after*** all the inventors signed the application, and thereafter returned to Cooley for processing, finalization, and filing.

But this Court has recognized that inventors sometimes need to rely on others during the reduction to practice process, whether in the context of actual or constructive reduction to practice, and that delegation alone does not evidence a lack of diligence. For example, the fact that "an inventor overseeing a study did not record its progress on a daily, weekly, or even monthly basis does not mean the inventor necessarily abandoned his invention or unreasonably delayed it." *Perfect Surgical*, 841 F.3d at 1009. "The same logic applies to the preparation of a patent application: the absence of evidence that an inventor and his attorney revised or discussed the application on a daily basis is alone insufficient to determine that the invention was abandoned or unreasonably delayed." *Id.*

This Court's decision in *Arctic Cat* is instructive. In that case, the critical period was seven months, and the Court rejected the notion that specific facts and dates were needed when the invention was being tested by others. The Court noted that "[l]ack of diligence cannot be inferred from putting the invention into someone else's hands … at least where ***oversight was diligent***. That course of action, as a way of reducing an invention to practice, does not give rise to an inference of unreasonable delay or abandonment of the invention." *Arctic Cat*, 919 F.3d at 1332. Google did not argue to the Board, nor does it argue here, that the inventors exercised insufficient oversight of Cooley's efforts. As such, Google has waived any such argument. *See, e.g.*, *In re Marquez*, 738 F. App'x 1012, 1015 (Fed. Cir. 2018) ("[W]e

have routinely held that a party waives an argument when its failure to present the argument to the Board deprives the court of 'the benefit of the [Board's] informed judgment.'" (quoting *In re Nuvasive, Inc.*, 842 F.3d 1376, 1380 (Fed. Cir. 2016))).

Finally, Google also ignores the efforts of Verity, the applicant, leading up to, during, and after the critical period. This Court has recognized that efforts of the applicant to *actually* reduce an invention to practice is relevant to the issue of whether there was unreasonable delay or abandonment with respect to an invention that was later *constructively* reduced to practice. In *Arctic Cat*, the Court considered the issue of diligence "until the reduction to practice was completed … with the filing of the application that issued as the [] patent." *Arctic Cat*, 919 F.3d at 1331. The Court found that evidence of testing the invention by a third party hired by the applicant for that purpose did not "give rise to an inference of unreasonable delay or abandonment of the invention." *Id*. at 1332.

Here, evidence around the critical period demonstrates that Verity was engaged in commercializing and improving products relating to the invention. For example, according to Verity's Annual Report covering the fiscal year ending May 31, 2002 (Appx1089), Verity was spending millions on "research and development" of its products (Appx1095), which included Verity's "Federated Search" technology that "allows users to submit a single query to multiple Verity and non-Verity information sources, and receive the results in a merged and ranked list that has been

filtered for duplicate results." Appx1102. In or around the critical period, Verity was also actively partnering to commercialize products relating to the invention, including by announcing a partnership with Oracle on July 17, 2001 that allowed "business exchange users to quickly and accurately search through multiple sources of data." Appx787; *see also* Appx53 (Claim 1) (reciting "transmitting a query to a set of search engines"). Dr. Cole analyzed and opined on other evidence of Verity's development efforts in the form of press releases and other public documents announcing and describing the availability of software products implementing at least some of the features of the '704 patent. Appx2450-2485 (¶42). While the Board did not rely on this evidence, it is relevant under the correct inquiry, which requires "[r]eviewing all the evidence under a rule of reason." *Arctic Cat*, 919 F.3d at 1331.

### D. Substantial Evidence Demonstrates Reasonably Continuous Diligence, Not Abandonment or Unreasonable Delay.

Substantial evidence supports the Board's finding that the invention was not abandoned or unreasonably delayed. Google's argument about the period of alleged inactivity from August 8 to August 27 is divorced from the realities of how patent applications are processed, finalized, and filed by law firms. As discussed above, after spending just a few days to diligently review and approve the patent application, the inventors handed the reigns over to Cooley, a well-known and respected law firm, to complete the application finalization and filing process. The

inventors did this by approving the draft patent application, signing the inventor declarations, and sending the signed documents to Cooley.

Google ignores that transmitting the declarations to Cooley necessarily involved some amount of time, perhaps several days given that the last-to-sign inventor was located in Canada at the time. Appx401 (showing inventor's physical address in Canada); Appx3606-3607 (9:20-10:5); Appx6260 (¶1) (inventor testifying that employment at Verity ended in May 2001). Valtrus noted that it "took time for the inventors' signed documents—including those from Dr. Tsaparas in Canada—to reach the law firm after being signed." Appx5692; Appx378 (showing law firm was located in Palo Alto, California).[6]

Google also ignores other activity within its alleged period of inactivity. On August 24, 2001, Cooley generated the application transmittal and drafted a non-publication request document, documents which were filed with the application and necessarily prepared ahead of time. Appx376-378 (doc date stamp of "082401"); Appx404 (same). August 24, 2001, was a Friday and law firms ordinarily do not conduct business over the weekend, nor is the USPTO open on weekends to receive paper filings. Appx376 (showing the application was paper filed on Monday, August 27). This evidence demonstrates that after the transmittal forms were generated on

[6] Google never contested the issue and cannot do so now on appeal. *See, e.g.*, *Marquez*, 738 F. App'x at 1015; *Nuvasive*, 842 F.3d at 1380.

Friday, August 24, Cooley diligently completed the application process on the very next business day by mailing the application papers to the USPTO on Monday, August 27.

Given the demonstrated activity on August 8 (Inventor Dr. Tsaparas signing the declaration) and on August 24 (the law firm drafting various application papers), Google's alleged three-week period of inactivity shrinks to August 9 through August 23. Given the two intervening weekends—periods when law firms are closed—Google's alleged period of inactivity dwindles to only 11 business days. But even those 11 business days contained additional activity, contrary to Google's assertion. For example, during that time Inventor Dr. Tsaparas' signature was traveling from Canada to Palo Alto, where Cooley was located. Only then could Cooley receive and process the inventor declarations (at least the last one), finalize and prepare the patent application for filing, and draft the related application papers that were submitted with the filing. Appx376 (listing several additional documents submitted with the patent application). Cooley additionally needed to calculate the various filing fees based on the final number of excess claims (Appx377) and generate the physical check for such fees (Appx378) (showing "Check No. 15291" was included with the filed application papers). Below is a graphic summarizing the diligence evidence and activities which necessarily occurred during the critical period between

Bushee's filing date and application's filing date, including during the at most 11 business days of alleged inactivity after the last inventor signature:




As Dr. Cole testified, this timeline evidences "that the applicant was reasonably continuously diligent" because tasks related to patent prosecution can take several weeks or more. Appx2494-2495 (¶55) (testifying regarding the preparation of "a final application [that] is ready for filing"). While Google attempts to re-weigh the evidence by discounting Dr. Cole's experience on the subject, Dr. Cole testimony reflects his own experience on the time it takes to prepare and file patent applications. *See id.* And while Google narrowly characterizes Dr. Cole's experience as limited to the "drafting process," his experience extends through the filing process as well. Appx3293-3294 (96:20-97:3) (testifying that, with respect to applications on which he was an inventor, he "had patent applications that began the

patent prosecution process”). Google also ignores the work Dr. Cole was doing in the relevant timeframe (2001) as a chief technology officer “[c]reat[ing] an intellectual property portfolio that included patents, journals, books, and white papers,” where the “[y]early patents were in line with the top 1000 producing patent companies in the United States.” Appx2536. Dr. Cole had firsthand experience and was qualified to testify on the issue.

Furthermore, the question is one of reasonably continuous diligence—not whether the law firm was engaged in daily activities devoted to the invention, which is not required. *Perfect Surgical*, 841 F.3d at 1009. As this Court’s predecessor long ago recognized, under the rule of reason, “courts should be somewhat liberal in determination of diligence of attorneys and of their clerical and stenographic staffs, since the law cannot presume that such people can immediately begin and expeditiously perform their duties as soon as work appears on their desks.” *D’Amico v. Koike*, 347 F.2d 867, 871 (CCPA 1965). Here, the law firm that prepared and filed the application (Cooley) is a large and well-respected law firm that the inventors reasonably relied upon to complete the necessary tasks in a timely manner. It took time to receive all of the inventor signatures, and the law firm had to complete a number of interim tasks before it could mail the application on Monday, August 27, 2001, as discussed above. This is not mere speculation. Cooley necessarily performed these tasks, including receiving and processing the signed inventor

declarations, finalizing the patent application for filing, drafting a number of related documents for submission with the application (Appx376), calculating the final filings fees (Appx377), and generating the physical check for such fees (Appx378). The Board was entitled to rely on this substantial evidence in finding that the small number of business days between the time when Cooley reasonably could have received all of the inventors' signatures, on the one hand, and the time when the application was filed, on the other hand, was reasonable under the circumstances, particularly in view of Dr. Cole's testimony and experience. *See* Appx21-22; *see also Perfect Surgical*, 841 F.3d at 1010 ("Under a rule of reason analysis, PST was not required to corroborate every day the application was worked on …. Such corroboration is particularly unnecessary when, as here, the record indisputably shows that activities ***must have occurred*** within the relevant timeframe.").

Google's case citations do not support its position. The issue before the Court in *In re Mulder*, 716 F.2d 1542 (Fed. Cir. 1983), stands in stark contrast to the issue Google raised here. In *Mulder*, the Court was asked to consider whether the PTO's refusal to accept the applicant's declaration under 37 C.F.R. § 1.131 was proper. *See Mulder*, 71 F.2d at 1545. Rule 131 requires that the dates of conception and construction to practice must be "coupled with due diligence." *Id*. Here, the Rule 131 requirement of coupling due diligence back to the date of *conception* is not

applicable. *Perfect Surgical*, 841 F.3d at 1007 ("Reasonable diligence … begins just prior to the competing reference's effective date ….").

But even under a more liberal construction of Rule 131, as the Court also considered, *Mulder* is distinguishable on the basis that "there [was] ***no evidence whatever*** of record showing diligence" throughout the nearly three months between the conception and constructive reduction to practice dates. *Mulder*, 716 F.2d at 1545. In that case, a U.S. patent application was prepared in the Netherlands and sent to the United States on July 15, 1974, but not filed until almost thirteen months later on August 6, 1975. *Id.* at 1543. As this Court observed, "between the time the draft application was received in this country and the time the application was filed in the U.S. PTO, the record shows no activity of any kind in this country." *Id.* at 1545 (noting that the "only intervening event of record" was the "filing of the patent application in the Netherlands" on October 9, 1974, which provided the constructive reduction to practice date). As a result, the Court affirmed based on "a total lack of evidence of diligence." *Id*. In other words, whether under a strict or liberal reading of Rule 131 the Court did not need to address the significance (or insignificance) of inactivity during the two-day period between the cited prior art and the filing date because "liberality cannot be extended to the point of eliminating all proof of diligence." *Id.* Here, Valtrus provided significant evidence of diligence throughout the critical period, and as this Court has clarified, "*In re Mulder* does not hold that

an inventor's inactivity ***during a portion of the critical period*** can, without more, destroy a patent owner's claim of diligence." *Perfect Surgical*, 841 F.3d at 1009. And unlike the applicant in *Mulder*, there is no evidence that a complete patent application sat unfiled for months.

Google also cites *In re Meyer Mfg. Corp.*, 411 F. App'x 316 (2010). The critical period in *Meyer* was two months, and the only evidence of diligence submitted was an affidavit from the inventors "attesting that the inventors and their attorney 'were diligent in drafting, revising, and filing the subject patent' from before Knight's filing date until the [] patent was filed." *Id.* at 318. This Court agreed with the examiner and the Board that a conclusory assertion of diligence by the inventors spanning over two months was insufficient. *See id*. at 318-20.

Here, by contrast, Valtrus provided undisputed document date evidence from the file history of specific activities at specific times demonstrating diligence spanning a much shorter critical period of time as detailed above, which, coupled with Dr. Cole's testimony, supports the Board's finding that no abandonment or unreasonable delay occurred. Appx376-378; Appx398-404; Appx2450 (¶41); Appx2494-2495 (¶55). Moreover, the alleged period of inactivity took place ***after*** the inventors had diligently completed their application reviewing, finalizing and signing obligations. That the inventors then had to wait for the law firm to complete the preparation and filing process was unavoidable. *See Gould v.*

*Schawlow*, 363 F.2d 908, 921 (CCPA 1966) ("Clearly it was the intent of Congress to assure the first inventor who had completed the mental act of invention that he should not be deprived of his reward by reason of delays which he could not reasonably avoid in giving his invention to the public.").[7] Google has not argued that the inventors were deficient in their oversight, and the small number of business days and the number of tasks necessarily completed by the law firm does not suggest anything short of reasonably continuous diligence.[8]

In sum, substantial evidence supports the Board's finding of "reasonably continuing activity to reduce the invention to practice," *Brown*, 436 F.3d at 1380, and that the invention was not abandoned or unreasonably delayed.

## II. Substantial Evidence Supports the Board's Conception Findings.

Substantial evidence likewise supports the Board's finding that Valtrus established a date of conception prior to Bushee's filing date. *See* Appx22. For example, the Board reviewed the Disclosure Documents attached to Inventor Dr.

---

[7] The court ultimately found insufficient diligence in *Gould*, but again, the facts were very different than this case. There, testimony from corroborating witnesses "was not specific as to dates and facts," and a purportedly corroborating notebook lacked specificity about when particular work was performed over a 14-month period, such that counsel for Gould conceded that it "probably could not attest to his continuous diligence." *Gould*, 363 F.2d at 920-21.

[8] Should this Court disagree with the Board, remand would be necessary at minimum to consider Valtrus' actual reduction to practice, as well as additional evidence supporting diligence, which the Board declined to consider. *See* Appx14 n.5; Section I.C, *supra*.

Tsaparas' Declaration (Appx6263-6274), and Valtrus' expert, Dr. Cole, provided detailed testimony establishing that these documents disclosed the invention of the '704 patent. Appx2450-2492 (¶¶ 42-53). The Board "reviewed and credit[ed] Dr. Cole's analysis of the support for each of the claim elements of each claim in the '704 patent in the Disclosure Documents." Appx18-20. As explained below, these documents include reliable, independent metadata corroborating dates and authorship. While Google disagrees about corroboration, Google did not contest that the substance of the Disclosure Documents evidences conception of the invention, nor does it challenge the Board's finding in that regard on appeal. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("Our law is well established that arguments not raised in the opening brief are waived.").

### A. The Disclosure Documents and Their Metadata Provide Substantial Evidence of Conception and Do Not Require Further Corroboration.

Google wrongly contends that Valtrus' evidence of conception lacks necessary corroboration. *See* BBr. 45-48. In so arguing, Google erroneously conflates the Tsaparas declaration and the Disclosure Documents. But the two are distinct parts of the exhibit submitted to the Board. The first four pages of the exhibit contain Inventor Dr. Tsaparas' declaration testimony (Appx6259-6262), while the remaining pages labeled "ATTACHMENTS" include the Disclosure Documents and metadata screenshots (Appx6263-6274). While the Tsaparas declaration is

sworn testimony of the inventor, which requires corroboration, the Disclosure Documents themselves do not require corroboration. For example, in *Mahurkar*, this Court held that it "does not require corroboration where a party seeks to prove conception through the use of physical exhibits. The trier of fact can conclude for itself what documents show, aided by testimony as to what the exhibit would mean to one skilled in the art." *Mahurkar*, 79 F.3d at 1577-78; *see also Price*, 988 F.2d at 1195 ("'[C]orroboration' is not necessary to establish what a physical exhibit before the board includes."). In fact, as this Court has held, "[d]ocumentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the inventor's testimony has been corroborated." *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1351-52 (2001).

The screenshots of the metadata attached to Inventor Dr. Tsaparas' declaration establishing the author and dates of the Disclosure Documents are part of the Disclosure Documents, and therefore likewise do not require further corroboration. Google also argues that the metadata is not independent of inventor testimony and documents, which is refuted below. *See* Section II.B, *infra*.

On appeal, Google repeatedly blames Valtrus for not producing native versions of the Disclosure Documents, but Google waived that argument by not seeking discovery of those native files. Appx35-36 (rejecting Google's argument that the metadata screenshots are not "originals" and noting that Google "could have

sought additional discovery related to Exhibit 2051/2069 and did not"). Google also failed to pose a single question to Inventor Dr. Tsaparas about the accuracy of the metadata. Appx17. Moreover, the Board denied Google's motion to exclude these documents as attachments to the Tsaparas declaration (Appx33-36), and Google has waived any challenges to that determination by not raising them on appeal. *See SmithKline Beecham*, 439 F.3d at 1319.

Google's arguments regarding the Disclosure Documents essentially amount to a waived authentication challenge, as evidenced by Google's focus on the accuracy of the dates in their metadata. *See* BBr. 50 ("[W]hether the dates shown in the metadata are *accurate* depends entirely on Dr. Tsaparas's testimony …."). But Inventor Dr. Tsaparas properly authenticated the Disclosure Documents, including the source and relevant dates, and Google failed to present any evidence that the Disclosure Documents were not authentic. If Google had concerns about authenticity, it could have moved to exclude the Disclosure Documents on that basis. Indeed, Google initially raised an objection to preserve the right to challenge the Disclosure Documents as unauthenticated (Appx2897), but declined to move to exclude on that basis, instead only challenging Inventor Dr. Tsaparas' declaration as hearsay and its exhibits under the best evidence rule, both of which the Board rejected (Appx33-36), and neither of which Google raises on appeal. *See SmithKline Beecham*, 439 F.3d at 1319 (finding such arguments waived).

### B. The Document Metadata Provides Independent Corroboration.

#### 1. Contrary to Google's Arguments, Documents Provided by an Inventor Can Include Independent Corroborating Evidence.

Google argues that the Disclosure Documents' metadata is not independent evidence based on the faulty assumption that independent evidence cannot be included in documents provided by the inventor. This Court's decisions hold otherwise. In *DuPont*, for example, an email *by the inventor* was deemed to corroborate the inventor's testimony about what was conceived and when. *See DuPont*, 921 F.3d at 1077 ("Documentary evidence, including a 2009 email sent by Dr. Kawka … corroborated Dr. Kawka's testimony."). In *REG Synthetic Fuels, LLC v. Neste Oil Oyj*, 841 F.3d 954 (Fed. Cir. 2016), the Court found three emails sent by the inventor dated no later than April 2008 sufficient to "corroborate [the inventor's] conception of the claimed compositions as of April 2008." *Id*. at 964. And in *NFC Technology, LLC v. Matal*, 871 F.3d 1367 (Fed. Cir. 2017), the Court found an inventor's testimony about authoring a data sheet corroborated by the fact that the document was "listed as '[b]y' 'BC.'," which corresponded to the inventor's initials. *Id.* at 1372. The Court also found that a date of "09-98" listed in a PCB layout document supported the inventor's testimony that he sent a design for fabrication in September 1998. *Id*. at 1373. The Court further found that a fax coversheet dated September 10, 1998, on which the inventor wrote "OK FAB" and

signed his name "corroborates that it was [the inventor] who directed the project and communicated the design for fabrication." *Id*. The Court concluded that the "initial data sheet, PCB layout, and cover sheet" constitute "independent documentary evidence corroborat[ing] [the inventor's] account of product development and later fabrication of the prototype." *Id*.

Contrary to Google's unduly narrow interpretation of what constitutes independent evidence, applying the "rule of reason" test requires examining "***all*** pertinent evidence" in order to determine whether the "inventor's story" is credible. *Price*, 988 F.2d at 1195. "[T]he credibility (and therefore corroborative value) of an inventor's [documentary evidence] may vary" and "unlike the oral testimony of an inventor, may be weighed, for whatever it is worth, in the final determination of reduction to practice." *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1170 (Fed. Cir. 2006)); *see also Lazare Kaplan Int'l v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1374 (Fed. Cir. 2010) ("Under this [rule-of-reason] analysis, this court evaluates all of the pertinent evidence 'so that a sound determination of the credibility of the [witness's] story may be reached.'" (quoting *Price*, 988 F.2d at 1195)).

Google attempts to distinguish *Price*, suggesting in a footnote that the need for corroboration (or lack thereof) is "separate from whether such exhibits need to be independent from the inventor." BBr. 56 (n.16). But corroboration and independence are directly intertwined because the purpose of corroboration "is to

protect against fraud and 'provide[ ] an additional safeguard against courts being deceived by inventors who may be tempted to mischaracterize the events of the past.'" *Mosaic Brands, Inc. v. Ridge Wallet LLC*, 55 F.4th 1354, 1363 (2022) (citing *Medichem,* 437 F.3d at 1170); *see also Kridl v. McCormick*, 105 F.3d 1446, 1450 (Fed. Cir. 1997) ("[T]he purpose of corroboration, … is to prevent fraud, by providing independent confirmation of the inventor's testimony."). In any event, while the Disclosure Documents do not require corroboration, the metadata in the Disclosure Documents provide independent corroborating evidence of the inventor's testimony on authorship and date of conception.

2. <u>The Disclosure Documents and Their Computer-Generated Metadata Are Not Akin to Unwitnessed Lab Notebooks.</u>

Google contends that the Disclosure Documents are akin to unwitnessed lab notebooks historically found insufficient for corroboration. BBr. 45-48. That analogy falls flat. Unlike the lab notebooks of yesteryear, Microsoft Word and other modern word processors independently witness the date of creation, the author, the last date of revision, and the person who did the editing. The word processor generates and stores this information as metadata within the document itself, as Google's own expert confirmed. Appx6161-63 (87:25-88:15, 89:10-21).

The Board understood that the metadata is not ***inventor testimony***. In denying Google's motion to exclude (which Google does not challenge on appeal), the Board correctly explained that metadata is not a statement by a declarant, but rather is

computer-generated data. Appx35 (citing *United States v. Washington*, 498 F.3d 225, 231 (4th Cir. 2007)). Thus, while the metadata provides independent corroboration, the metadata itself does not require further corroboration.

Google attempts to undermine the reliability of metadata by conflating the "document metadata" at issue here with "file system metadata." Appx6063-6066. The operating system maintains ***file system metadata***, which it stores separate from the file, as Google's expert confirmed. Appx6158 (84:10-20). This makes it unreliable because, as Dr. Barr testified, file system metadata "can be updated [] in ways that you wouldn't expect." Appx3566 (66:12-19). As a result, "[s]imply pointing at a particular [file system] time stamp and making a claim about its connection to a timeline for a piece of evidence would be a mistake without properly interpreting how the time stamp was created." Appx6072.

In sharp contrast, modern digital forensics recognizes the importance and usefulness of ***document metadata*** as a tool in the legal profession. For example, a book before the Board entitled Digital Forensics for the Legal Profession recognizes that "[m]etadata can be a veritable gold mine of useful information in a case," whereas "[f]ile system metadata is easily misinterpreted and can be very difficult to understand." Appx6062-6063. More specifically, "[d]ocument metadata is metadata stored inside a document that provides information about the authorship, editing time, and even the computer on which the document was created." Appx6064-6065.

Valtrus also provided expert testimony and supporting evidence demonstrating that document metadata is reliable. *See* Appx2450 (¶41) (Dr. Cole relying on the document metadata in his analysis); *see also* Appx6066 ("[O]ffice document metadata contains a wealth of information about the life of the document.").

Here, the metadata at issue is ***document*** metadata generated by Microsoft Word, which is credible information unlike the file system metadata that Google points to in its arguments and case citations. During oral argument, the Board was presented with a screenshot of the "Info" page in Microsoft Word for one of the Disclosure Documents. Appx6427. The screenshot confirms the document name (top left) matches one of the Disclosure Documents. *See id*.; Appx6260-6261 (¶¶3-5); Appx6265. The person logged in at the time the screenshot was taken is shown to be Inventor Dr. Tsaparas (top right). Appx6427. Further, in the bottom right, the screenshot shows the original creation date, last modified date, author and "Last Modified By" information. *See id*. The Microsoft Word application independently created this metadata, and there is no evidence that Inventor Dr. Tsaparas would have, or even could have, altered the information. In fact, despite Google's attempts to discredit Inventor Dr. Tsaparas and his declaration, the Board found his testimony on authorship and his testimony that the documents were not altered after Date [redacted] to be "uncontroverted." Appx17 (noting that "Petitioner attempts to discredit Dr. Tsaparas' declaration testimony regarding the date of the Disclosure Documents,

but Petitioner cross-examined Dr. Tsaparas and did not question Dr. Tsaparas' authorship of the documents or the document metadata").

Moreover, Dr. Cole independently reviewed the invention disclosures ***and metadata*** and testified that, "[c]onsistent with Inventor Tsaparas' declaration, I note that the metadata of the documents shows that the Disclosure Documents were originally created by Person's Identity [redacted] on Date [redacted], sent to Person's Identity [redacted], who then made certain edits no later than Date [redacted]." Appx2450 (¶41) (citing Appx2552, Appx2557 which correspond to Appx6260, Appx6265). As noted by the Board, Google deposed both Dr. Cole and Inventor Dr. Tsaparas but avoided questions relating to the document metadata. Appx17 ("Petitioner cross-examined Dr. Tsaparas and did not question Dr. Tsaparas' authorship of the documents or the document metadata.").

Google also chose not to submit a supplemental expert declaration challenging the reliability or independence of the document metadata, and therefore Dr. Cole's and Inventor Dr. Tsaparas' testimony about the metadata stands unconverted. Based on the evidentiary record before it, the Board considered but correctly rejected Google's arguments that the document metadata was unreliable. Appx17-18 ("While Petitioner argues that this metadata might be unreliable without more information about how the documents were maintained or what the access

policies were, we view the corroboration to be sufficient under a rule-of-reason analysis." (internal citation omitted)).

3. The Document Metadata at Issue Here Qualifies as Independent Corroborating Evidence.

Google attempts to do with case law what it could not do with evidence—show that document metadata is not independent (and hence not reliable or credible) corroborating evidence.[9] But Google's cases are distinguishable at least because they address file system metadata, which is known to be unreliable as described above, not the distinct document metadata at issue here, which the evidence shows is independent, stored within the file itself, and reliable. Section II.B.2, *supra*.

For example, in *EMC Corporation v. Pure Storage, Inc.*, 204 F. Supp. 3d 749 (D. Del. 2016), which dealt with image timestamps and "file name dates," the evidence showed that the inventor "had control of the camera, the photograph file names, and the metadata." *Id*. at 760-61. Similarly, *Kenexa Brassring, Inc. v. Taleo Corp.*, 751 F. Supp. 2d 735 (D. Del. 2010), involved file system metadata, and the evidence showed a user could "modify the timestamp on a source code file by simply

[9] Google suggests that Valtrus only belatedly argued that the metadata were independent evidence of corroboration. But Google's arguments had focused on credibility of the metadata, not its independence, by confusing it with file system metadata. Appx2989. Regardless, in the Patent Owner Sur-Reply under the heading of "Corroborating Evidence Supports Swear-Behind," Valtrus did argue for the reliability, and by implication the independence, of document metadata stored inside the document itself. *See* Appx5683.

changing the system time on a development computer and making a trivial modification to the file." *Id.* at 761-62. In each of these cases, it was clear that the inventor had the ability to modify the type of metadata at issue, therefore rendering the information unreliable. In contrast, there is no evidence here that Inventor Dr. Tsaparas would, or even could, modify the document metadata generated and maintained inside the file by Microsoft Word.

In *Transocean Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp*., 443 F. Supp. 2d 836 (S.D. Tex. 2006), the court found drawings did not establish conception because they did not disclose all of the elements of the asserted claims. *See id*. at 857-58 (finding that the drawings "do not disclose the pipe handling element of the asserted claims" or "simultaneous drilling and auxiliary operations being conducted on a single well"). The court also found that the "Last Modified Date" did not establish a date of conception because the inventor testified that the operating system "did not store create date information," and hence the "Last Modified Date" did not corroborate the inventor's testimony that he *created* the drawings. *Id*. at 856, 858. Thus, the Court in *Transocean* did ***not*** find that the "Last Modified Date" was not credible or not independent from the inventor's testimony.

The decision in *Tracktime, LLC v. Amazon.com Servs. LLC*, No. 18-1518, 2024 WL 4300101 (D. Del. Sept. 26, 2024), is similarly distinguishable. In that case, the court denied a motion for a new trial based in part on the court's decision to

exclude a draft patent application as confusing to the jury. *See id*. at *10. Unlike this case, the dates reflected in the patent application's metadata were inconsistent and confusing, and the patent owner's expert failed to address these reliability issues in his report. *Id.* No such inconsistencies or similar circumstances exist here.

On the other hand, courts and fact finders have treated ***document metadata*** as proper evidence corroborating inventor testimony. For example, in *Dana-Farber Cancer Inst., Inc. v. Ono Pharma. Co*., 379 F. Supp. 3d 53, 86 (D. Mass. 2019), the court held that "[t]he metadata showing that Dr. Freeman last edited his slides the day before the meeting corroborates his testimony that he finished the slides a few hours before getting on the airplane to go to Seattle." *See also* Appx6064-6065 ("All of the major office suites … record metadata in some form inside the word processing documents, spreadsheets, and ***presentations*** created with the programs in these suites."). In *ATI*, document metadata corroborated inventor testimony about diligence. *ATI Techs.*, 920 F.3d at 1370-71 (explaining that the document metadata was maintained by the program that generated it). Moreover, at least one additional PTAB panel has found that metadata associated with an invention disclosure in the form of a draft patent application "stands on its own as evidence of the conception date, and needs no further corroboration." *Unified Patents vs. Flexiworld Techs.*, IPR2022-00775, Paper 41, at 16 (PTAB Nov. 1, 2023) (citing *Price*, 988 F.2d at 1195). The same applies to the metadata in the Disclosure Documents in this case.

### C. Google's Reliance on *Apator* Is Misplaced.

Google contends the Board wrongly distinguished *Apator Miitors APS v. Kamstrup A/S*, 887 F.3d 1293, 1296 (Fed. Cir. 2018) from this case, arguing that it compels a finding of insufficient corroboration here. BBr. 49-53 (citing Appx18). But Google's reliance on *Apator* is without merit. In *Apator*, the patent owner attempted to corroborate the inventor's testimony about the date of conception with emails that purportedly included attachments, but "[n]one of the emails themselves indicate what file was attached or what such attachment disclosed," and thus "can only provide that corroboration with help from [inventor] testimony." *Apator*, 887 F.3d at 1296-97. The Court did not suggest that the dates on the emails were not otherwise independent evidence, only that the dates could not be tied to the missing attachments without inventor testimony.

In contrast to the emails at issue in *Apator*, the exhibits to Inventor Dr. Tsaparas' declaration include ***both*** independently generated metadata and the substantive evidence of reduction to practice itself in the form of the Disclosure Documents. They are thus unlike the emails in *Apator*, which contained no evidence of the reduction to practice. *Id.* at 1296. This case does not present the same "catch-22 of corroboration" wherein "Apator attempt[ed] to corroborate Mr. Drachmann's testimony with the emails and the drawings, but the emails and drawings can only provide that corroboration with help from Mr. Drachmann's testimony." *Id.* Here,

Valtrus does not rely on Inventor Dr. Tsaparas' testimony to establish the date of the Disclosure Documents, although his testimony about his employment at Verity is consistent with those dates. *See* Appx6259 (¶ 1). Instead, the metadata dates stand on their own as described above. Nor does Valtrus rely on Inventor Dr. Tsaparas' testimony alone to establish who authored the documents or what was conceived.[10] That information is apparent from both the content of the Disclosure Documents and the metadata. *See* Appx6268; Appx6272 (listing the names of Individuals' Identity [redacted] on the first page of the Disclosure Documents); *see also* Appx6265; Appx6267 (identifying the author as "Person's Identity [redacted] corresponding to Person's Identity [redacted] and the "Last Modified By" as Person's Identity [redacted]). This was confirmed by Dr. Cole. Appx2450 (¶41). Thus, Google is incorrect; Valtrus does not "need[] Dr. Tsaparas's testimony to establish the dates and authors for those documents." BBr. 53. Instead, Inventor Dr. Tsaparas authenticated the Disclosure Documents and provided certain testimony consistent with the independent evidence. That testimony, which the Board found "uncontroverted," established "that another Person's Identity [redacted] originally created the Disclosure Documents, that Person's Identity [redacted] made additions

[10] Google also questions the authorship of the Disclosure Documents (BBr. 52, 53), which is odd given that its argument about the metadata allegedly not being 'independent' evidence rests firmly on its assertion that the Disclosure Documents are *by the inventor*s. BBr. 46 ("Turning to the Disclosure Documents, they too are plainly Dr. Tsaparas's 'own' documents.").

 Date

to the documents, and that the documents were not altered after [redacted]." Appx17.

The independent evidence at issue here more closely resembles that in *Mosaic Brands,* where the inventor "attached to his declaration (1) design plans for the SMCII from October 19, 2010, and (2) invoices seemingly showing that the SMCII was sold at a trade show in 2011." *Mosaic Brands*, 55 F.4th at 1364. Even though the documents were all provided by the inventor, the Court reasoned that "[i]f a reasonable factfinder credits [the inventor's] testimony and finds his documents to be authentic, which she could, this collection of evidence would provide a sufficient basis from which the factfinder could find that the SMCII was on sale by 2011." *Id*. That is precisely what the Board did here. It evaluated Inventor Dr. Tsaparas' testimony and documents, along with Dr. Cole's analysis of the same, and found them to be authentic and credible. And while Google attempted to exclude the evidence on evidentiary grounds, the Board properly rejected those arguments (*see* Appx33-36), and Google does not challenge that determination as an abuse of discretion on appeal.

Google additionally cites this Court's decision in *Kolcraft Enterprises, Inc. v. Graco Children's Products, Inc.*, 927 F.3d 1320 (Fed. Cir. 2019), to suggest that exhibit metadata is insufficient to establish a conception date. BBr. 51. That decision is readily distinguishable. While Google attempts to draw parallels to the fact that

the patent owner in *Kolcraft* did not file the computer files of the exhibits containing the metadata with the Board,[11] Google omits the important fact that the patent owner had only filed a redacted version of the inventor declaration omitting all relevant date information from both the declaration and exhibits. *See Kolcraft*, 927 F.3d at 1323 (noting that the "Inventor Declaration ***redacted the dates*** when the exhibits were purportedly created, using blank spaces where relevant dates would have been").[12] Thus, in contrast to the exhibits at issue here, the exhibits before the Board in *Kolcraft* were "undated and lack[ed] any showing of authorship," and "evidence as to the dates of creation" was "found only in the Inventor Declaration and not in the Exhibits themselves." *Id*. at 1325. Thus, much like *Apator*, *Kolcraft* supports the Board's determination while undermining Google's contentions on appeal.

### D. The Record Contains Significant Additional Corroborating Evidence.

Valtrus submitted myriad additional independence evidence corroborating conception. The Board did not consider this additional evidence because it misunderstood the evidence as relating solely to actual reduction to practice, which was not the basis for its decision. *See* Appx14 (n.5); Appx18 (n.6).

---

[11] In this case, Google never sought discovery of the native files. Appx35-36.

[12] While the patent owner in *Kolcraft* belatedly attempted to file an unredacted version of the invention declaration the day before the oral hearing, the Board found this improper, and the patent owner admitted that "that the unredacted version of the Inventor Declaration was 'not in the record.'" *Kolcraft*, 927 F.3d at 1323.

Dr. Cole presented the additional corroborating evidence in an element-by-element claim chart "identifying support for each of the claim elements in the '704 Invention Disclosure," with citations to both the Disclosure Documents in one column and to "Additional Evidence" in a separate column of the chart. Appx2450-2485. The "Additional Evidence" includes deposition testimony from former non-inventor employees at Verity, Michel Tourn and Mani Abrol, including testimony about publicly available products and features offered by Verity around the time of the Disclosure Documents. Appx2450-2485 (¶42); Appx92-93 (¶54); Appx784; Appx787; Appx790; Appx793; Appx795; Appx803; Appx806; Appx1063; Appx1075-1076; Appx1102; Appx1217; Appx1276; Appx1292; Appx1343-1344; Appx1357; Appx1426; Appx1431; Appx1435; Appx1436; Appx2762-2763 (14:25-15:9); Appx2786 (34:15-25); Appx2810-2811 (54:2-55:1); Appx2845-2849 (16:22-17:1, 18:21-19:12). Neither Valtrus nor Dr. Cole limited the relevance of this additional evidence to actual reduction to practice, but instead broadly characterized it as "corroborating the '704 invention's conception and reduction to practice." Appx2485-2486 (¶43). Valtrus also submitted additional documentary evidence demonstrating ***both*** conception and reduction to practice of various claim elements before Bushee, which the Board did not consider. *See* Statement of the Case, Section III.B.1, *supra*; Appx 36 (indicating no reliance on EX2050 (Appx2542-2550), EX2057-2062 (Appx5718-6074), or EX2064-2067 (Appx6200-6205).

Thus, while the Board did not need to rely on this evidence because substantial evidence already supported the conception date, it remains additional corroborating evidence of the Disclosure Documents and Inventor Dr. Tsaparas' testimony, and it was offered for that reason. Appx2485-2486 (¶43). Therefore, should this Court vacate the Board's conception findings, this additional evidence must be considered under the "rule of reason" approach. *See Price*, 988 F.2d at 1195. Indeed, Google concedes that, should it prevail on this issue, the appropriate relief would be "vacatur and remand for the Board to consider Valtrus's other evidence of conception." BBr. 58. Again, however, based on "all the [relied-upon] evidence under a rule-of-reason," substantial evidence supports the Board's finding "that the conception date for all the challenged claims is on or earlier than April 11, 2001." Appx20. This Court should affirm.

## III. Valtrus Satisfied Its Burden of Production, and Google Failed to Establish Otherwise.

There are two distinct burdens of proof: the burden of persuasion and the burden of production. *Dynamic Drinkware*, 800 F.3d at 1378 (citing *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1326-27 (Fed. Cir. 2008)). The petitioner bears the ultimate burden of persuasion regarding unpatentability, which never shifts to the patent owner. *Id*. at 1379. The burden of production, however, is a shifting burden, where the petitioner bears the initial burden of production to show a reference is prior art. *Id*. Once petitioner satisfies its initial burden, the burden of

production then ***temporarily*** shifts to the patent owner to identify evidence refuting the petitioner's argument by either showing the prior art does not actually render the claims unpatentable or does not qualify as prior art. *Id*. at 1380; *Medtronic, Inc. v. Teleflex Innovations S.À.R.L.*, 68 F.4th 1298, 1303 (2023) ("[W]hen a patent owner attempts to antedate an asserted prior art reference, the patent owner takes on a temporary burden of production."). The burden of production then shifts back to the petitioner (with whom the burden of persuasion remains) to respond to patent owner's argument, as Google acknowledges. BBr. at 27 (citing *Dynamic Drinkware*, 800 F.3d at 1379); *see also Medtronic*, 68 F.4th at 1303 (noting that "the burden shifts back to the petitioner"). For example, in *Dynamic Drinkware*, "the burden of production returned to Dynamic to prove that either the invention was not actually reduced to practice as argued, or that the Raymond prior art was entitled to the benefit of [an earlier] filing date." *Dynamic Drinkware*, 800 F.3d at 1380; *see also Mahurkar*, 79 F.3d at 1578 (holding that patent challenger failed to meet its burden of persuading the jury to reject an inventor's evidence of prior conception and diligence).

Valtrus' easily cleared its burden of production to show prior conception by submitting the Disclosure Documents, corroborating metadata, testimony from Inventor Dr. Tsaparas authenticating the Disclosure Documents and metadata, testimony from Dr. Cole detailing how the Disclosure Documents show prior

conception, as well as additional corroborating employee testimony and documents from Verity. *See* Statement of the Case, Section III.B.1, *supra*. At that point, the burden of production shifted ***back to Google***. But Google countered with little more than attorney argument. Google could have attempted to submit new, responsive evidence with its Petitioner Reply, such as an expert declaration, challenging the metadata evidence or the content of the Disclosure Documents. Google submitted no such evidence. Google also deposed both Inventor Dr. Tsaparas and Dr. Cole, but carefully avoided any questions relating to the metadata, authorship, or contents of the Disclosure Documents. Furthermore, Google failed to put into evidence any testimony from Inventor Raghavan. Inventor Raghavan is not only the original author of the Disclosure Documents (Appx6260; Appx6265; Appx2450 (¶41)), he is a ***longtime Google employee***. Appx777 (identifying Raghavan as "Senior Vice President at Google"). If Google had legitimate concerns about the accuracy of the metadata, or otherwise believed the Disclosure Documents did not prove prior conception, it was well-positioned to provide evidence to that effect. If Google was right that the metadata or Disclosure Documents were not credible, it could have asked its own employee, a named inventor on the '704 patent, to submit a declaration attesting to that effect.[13] Its failure to do so speaks volumes. In any event, Google's

[13] Jianchang Mao, another co-inventor, is a former Google employee. Appx763.

failures to respond with evidence were insufficient to carry its burden of production, let alone its burden of persuasion. Thus, for this additional reason, the Board's decision is correct.

## CONCLUSION AND RELIEF SOUGHT

Valtrus respectfully requests that this Court affirm the Board's Final Written Decision.

Dated: January 16, 2025

Respectfully submitted,

By: */s/ Jonathan Lindsay*

Jason Sheasby
Hong Annita Zhong
Amy E. Proctor
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Phone: 310-277-1010

Jonathan M. Lindsay
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Phone: 949-760-0991

Philip Warrick
IRELL & MANELLA LLP
750 17th Street NW, Suite 850
Washington, DC 20006
202.777.6500

*Counsel for Appellee*
*Valtrus Innovations Ltd.*

## CERTIFICATE OF COMPLIANCE

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because:

1. The filing has been prepared using a proportionally-spaced typeface and includes 13,620 words as determined by the word count feature of the word processing program used to create this brief.

2. The filing has been prepared using Microsoft Word for Office 365 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Dated: January 16, 2025

Respectfully submitted,

By: */s/ Jonathan Lindsay*

Jason Sheasby
Hong Annita Zhong
Amy E. Proctor
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Phone: 310-277-1010

Jonathan M. Lindsay
IRELL & MANELLA LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Phone: 949-760-0991

Philip Warrick

IRELL & MANELLA LLP
750 17th Street NW, Suite 850
Washington, DC 20006
202.777.6500

*Counsel for Appellee*
*Valtrus Innovations Ltd.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 2024-1945

**Short Case Caption:** Google LLC v. Valtrus Innovations Ltd.

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).
- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

The foregoing document contains 14 number of unique words (including numbers) marked confidential.

☑ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 01/16/2025

Signature: /s/ Jonathan M. Lindsay

Name: Jonathan M. Lindsay