**2024-1945**

# United States Court of Appeals for the Federal Circuit

**GOOGLE LLC,**
*Appellant*

v.

**VALTRUS INNOVATIONS LTD.,**
*Appellee*

**Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Case No. IPR2022-01545**

**NON-CONFIDENTIAL REPLY BRIEF OF APPELLANT GOOGLE LLC**

Nathan R. Speed
Richard F. Giunta
Adam R. Wichman
John W. Custer
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
BOSTON, MA 02210

*Counsel for Appellant Google LLC*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2024-1945

**Short Case Caption** Google LLC v. Valtrus Innovations Ltd.

**Filing Party/Entity** Google LLC

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/10/2025

Signature: /s/ Nathan R. Speed

Name: Nathan R. Speed

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Google LLC | | XXVI Holdings Inc.; Alphabet Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Smith & Balluch | Andrew S. Balluch | Elizabeth A. Laughton |
| Matthew A. Smith | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........ i
TABLE OF CONTENTS ........ iv
TABLE OF AUTHORITIES ........ vi
INTRODUCTION ........ 1
ARGUMENT ........ 3

A. Substantial Evidence Does Not Support the Board's Diligence Finding. ........ 3

1. Valtrus Improperly Defends the Board's Decision with Arguments Valtrus Never Raised and Evidence the Board Declined to Consider. ........ 4

2. The Board Relied on Pure Speculation to Explain Away the Gap of Inactivity. ........ 6

3. Valtrus Failed to Distinguish Google's Cases. ........ 12

4. Valtrus Does Not Defend the Board's Improper Burden Shifting. ........ 14

5. Remand Is Unnecessary. ........ 16

B. Valtrus's Evidence of Conception is Insufficient As a Matter of Law. ........ 17

1. Valtrus Improperly Conflates Self-Corroboration with Independence. ........ 19

2. The Alleged Metadata is Not Independent Evidence. ........ 23

a. Valtrus Forfeited Its Argument That Metadata Is An Independent Source of Evidence. ........ 24

b. The Alleged Metadata is Not Independent Evidence as Its Evidentiary Value Relies on Dr. Tsaparas's Testimony. ........ 26

c. "Document Metadata" Is Not Inherently More Reliable Than "System Metadata." ........ 29

3. This Court Cannot Affirm Based On Evidence The Board Declined to Consider. ....32

4. Valtrus Never Satisfied Its Burden of Production to Provide Independent Corroborating Evidence. ....32

CONCLUSION ....33

CERTIFICATE OF COMPLIANCE ....34

CERTIFICATE OF SERVICE AND FILING ....35

**CONFIDENTIAL MATERIAL OMITTED**

The material redacted on pages 23 and 27 of this brief is subject to the Board's Protective Order issued in IPR2022-01545. The redacted material on pages 23 and 27 quotes from a portion of a deposition transcript that has been sealed pursuant to the Board's Protective Order issued in IPR2022-01545.

# TABLE OF AUTHORITIES

## CASES

*Alacritech, Inc. v. Intel Corp.*,
966 F.3d 1367 (Fed. Cir. 2020) ........ 6, 32

*Apator Miitors ApS v. Kamstrup A/S*,
887 F.3d 1293 (Fed. Cir. 2018) ........ 22, 23, 27, 28

*Arctic Cat Inc. v. GEP Power Prods., Inc.*,
919 F.3d 1320 (Fed. Cir. 2019) ........ 4, 5

*ATI Techs. ULC v. Iancu*,
920 F.3d 1362 (Fed. Cir. 2019) ........ 30

*Brown v. Barbacid*,
276 F.3d 1327 (Fed. Cir. 2002) ........ 19

*Cablz, Inc. v. Chums, Inc.*,
708 F. App'x 1006 (Fed. Cir. 2017) ........ 25

*Creative Compounds, LLC v. Starmark Labs.*,
651 F.3d 1303 (Fed. Cir. 2011) ........ 3

*D'Amico v. Koike*,
347 F.2d 867 (C.C.P.A. 1965) ........ 10, 11, 12

*Dana-Farber Cancer Insts., Inc. v. Ono Pharm. Co.*,
379 F.Supp.3d 53 (D. Mass. 2019) ........ 30

*Dell Inc. v. Acceleron, LLC*,
884 F.3d 1364 (Fed. Cir. 2018) ........ 24

*E.I. du Pont de Nemours & Co. v. Unifrax I LLC*,
921 F.3d 1060 (Fed. Cir. 2019) ........ 20

*EMC Corp. v. Pure Storage, Inc.,*
204 F. Supp. 3d 749 (D. Del. 2016) ........ 30

*Ex Parte Meyer Mfg. Corp.*,
2010 WL 200407 (PTAB Jan. 10, 2010) ........ 14

*Frilette v. Kimberlin*,
412 F.2d 1390 (C.C.P.A. 1969) ........ 26, 27

*Gould v. Schawlow*,
363 F.2d 908 (C.C.P.A. 1966) ........ 14

*Hahn v. Wong*,
892 F.2d 1028 (Fed. Cir. 1989) ........ 22, 25

*In re Google Tech.*,
980 F.3d. 858 (Fed. Cir. 2020) ........ 9

*In re Magnum Oil Tools Int'l, Ltd.*,
829 F.3d 1364 (Fed. Cir. 2016) ........ 15

*In re Meyer Mfg. Corp*.,
411 F. App'x 316 (Fed. Cir. 2010) ........ 7, 13, 14

*In re Mulder*,
716 F.2d 1542 (Fed. Cir. 1983) ........ 12, 13

*In re Stepan Co.*,
868 F.3d 1342 (Fed. Cir. 2017) ........ 32

*Kenexa Brassring, Inc. v. Taleo Corp.,*
751 F. Supp. 2d 735 (D. Del. 2010) ........ 31

*Kistler v. Weber*,
412 F.2d 280 (C.C.P.A. 1969) ........ 21

*Mahurkar v. C.R. Bard, Inc.*,
79 F.3d 1572 (Fed. Cir. 1996) ........ 20

*MCM Portfolio LLC v. Hewlett-Packard Co.*,
812 F.3d 1284 (Fed. Cir. 2015) ........ 17

*Medichem, S.A. v. Rolabo, S.L.*,
437 F.3d 1157 (Fed. Cir. 2006) ........ 19, 22

*Medtronic, Inc. v. Teleflex Innovations S.A.R.L.*,
68 F.4th 1298 (Fed. Cir. 2023) ........ 15

*Monsanto Co. v. Mycogen Plant Sci., Inc.*,
261 F.3d 1356 (Fed. Cir. 2001) ........................................................................3

*Mosaic Brands, Inc. v. Ridge Wallet LLC*,
55 F.4th 1354 (Fed. Cir. 2022) ........................................................................21

*Netflix, Inc. v. DivX*,
84 F.4th 1371 (Fed. Cir. 2023) ........................................................................17

*NFC Tech., LLC v. Matal*,
871 F.3d 1367 (Fed. Cir. 2017) ........................................................................21

*OSI Pharms., LLC v. Apotex Inc.*,
939 F.3d 1375 (Fed. Cir. 2019) ........................................................................3, 7

*Perfect Surgical Techs., Inc. v. Olympus Am., Inc.*,
841 F.3d 1004 (Fed. Cir. 2016) ........................................................................12

*Price v. Symsek*,
988 F.2d 1187 (Fed. Cir. 1993) ........................................................................20

*Proctor & Gamble Co. v. Teva Pharms USA, Inc.*,
566 F.3d 989 (Fed. Cir. 2009) ........................................................................22

*Purdue Pharma L.P. v. Iancu*,
767 F. App’x 918 (Fed. Cir. 2019) ........................................................................15

*REG Synthetic Fuels, LLC v. Neste Oil Oyj*,
841 F.3d 954 (Fed. Cir. 2016) ........................................................................21

*Sandt Tech., Ltd. v. Resco Metal and Plastics Corp.*,
264 F.3d 1344 (Fed. Cir. 2001) ........................................................................20

*Schwendimann v. Neenah, Inc.*,
82 F.4th 1371 (Fed. Cir. 2023) ........................................................................ 5, 17

*Shu-Hui Chen v. Bouchard*,
347 F.3d 1299 (Fed. Cir. 2003) ........................................................................27

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) ........................................................................16

*Thurston v. Wulff*,
164 F.2d 612 (C.C.P.A. 1947)........................................................................ 26, 27

*TQ Delta, LLC v. Cisco Sys., Inc.*,
942 F.3d 1352 (Fed. Cir. 2019)..............................................................................6

*Tracktime, LLC v. Amazon.com Servs. LLC,*
C.A. No. 18-1518 (MN), 2024 WL 4300101 (D. Del. Sept. 26, 2024)...............31

*Transocean Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp.*,
443 F.Supp.2d 836 (S.D. Tex. 2006)....................................................................31

**OTHER AUTHORITIES**

77 Fed. Reg. 48,756 (Aug. 14, 2012) .....................................................................24

## INTRODUCTION[1]

The Board's reduction-to-practice and conception findings are premised on alleged facts that—as a matter of law—cannot qualify as substantial evidence. Vacatur is necessary.

***Reduction-to-Practice***. The disputed period runs from August 8, 2001—when Valtrus's patent application was completed and signed—to August 27, 2001—when the application was filed. The Board found a law firm was diligently finalizing the application during that period. That finding, however, is premised on speculation from Valtrus's non-attorney technical expert who has no knowledge of what actually happened. Such speculation is not substantial evidence.

Valtrus defends the Board's decision by pointing to this Court's flexible approach to diligence. But flexibility is not a substitute for evidence, and this Court has made clear even short gaps in a diligence timeline are fatal where an ***evidence-based*** explanation for the gap is missing. Speculation that the law firm was likely diligent is simply not enough to affirm.

Valtrus tries to identify evidentiary support for the Board's finding, but fails. For example, Valtrus points to events occurring ***before*** August 8, 2001—but those events say nothing about what happened ***after*** that date. Valtrus also relies on evidence the Board expressly declined to consider, but the Board's decision cannot

[1] Emphasis added throughout.

be affirmed based on evidence the Board never considered. At the end of the day, all Valtrus can provide this Court is more speculation that some activities likely occurred, but the very cases Valtrus relies on confirm such speculation is insufficient.

***Conception***. Valtrus does not directly dispute that an inventor's conception testimony cannot be corroborated by his documents alone. That should be dispositive as the Board found Dr. Tsaparas's conception testimony corroborated by documents he—and only he—possessed for the last two decades.

Valtrus tries to confuse the issue by arguing Dr. Tsaparas's documents are self-corroborating. But that is irrelevant. Even self-corroborating documents cannot ***alone*** corroborate an inventor's testimony if those documents are the inventor's own documents—an inventor's unwitnessed lab notebook is a textbook example. The issue is independence, not self-corroboration.

As for independence, Valtrus makes the remarkable argument that metadata allegedly associated with Dr. Tsaparas's documents is independent. This argument is forfeited because Valtrus did not timely raise it below. Regardless, it lacks merit as the alleged metadata has no evidentiary value without Dr. Tsaparas's testimony. Inventor-controlled metadata is not independent.

## ARGUMENT

### A. Substantial Evidence Does Not Support the Board's Diligence Finding.

Valtrus does not dispute it had to "account for the entire period during which diligence [was] required." *Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1312-13 (Fed. Cir. 2011); Principal Brief ("BlueBr.") at 29. Valtrus likewise does not dispute it needed to provide a "satisfactory explanation," ***supported by evidence***, for ***any*** gaps in activity during the critical period. *Monsanto Co. v. Mycogen Plant Sci., Inc.*, 261 F.3d 1356, 1369 (Fed. Cir. 2001); BlueBr. 29. And while Valtrus quibbles with its exact length, Valtrus cannot dispute there is at least some gap of documented activity between August 8, 2001, when the application was ready for filing, and August 27, 2001, when the application was filed. Response Brief ("RedBr.") at 3 ("at most 11 business days").

The lone question for the Court to resolve is whether Valtrus provided ***evidence*** to explain this gap. It did not. Valtrus's reduction-to-practice case was instead built on ***speculation*** as to what the inventors and their lawyers ***may*** have done during the gap, but "mere speculation is not substantial evidence." *OSI Pharms., LLC v. Apotex Inc.*, 939 F.3d 1375, 1382 (Fed. Cir. 2019) (quotation omitted).

### 1. Valtrus Improperly Defends the Board's Decision with Arguments Valtrus Never Raised and Evidence the Board Declined to Consider.

The Board accepted Valtrus's assertion that "the law firm exercised reasonably continuous diligence between August 8 and August 27, working on various aspects of finalizing and filing of the application." Appx21 (quotations omitted). That finding is premised on speculation, not evidence. BlueBr. 34-36.

Rather than identify evidence that could support the Board's finding, Valtrus distractingly recounts activities that occurred ***prior*** to August 8, 2001. RedBr. 26-29. Valtrus claims Google "[i]gnores" this evidence (RedBr. 28), but Google addressed the evidence, observing that it consists principally of ambiguous document notations in the prosecution history. BlueBr. 30-33.

To simplify the appeal, however, Google has not disputed the application was completed by July 30 and signed by August 8. BlueBr. 34. But this simplification says nothing about what the law firm was doing between August 8 and August 27 when the application was filed.

Turning to that disputed time period, Valtrus claims inventors can remain diligent even when they hand their inventions to third parties (*e.g.*, attorneys) so long as the inventors provide "diligent" "oversight." RedBr. 30 (quoting *Arctic Cat Inc. v. GEP Power Prods., Inc.*, 919 F.3d 1320, 1332 (Fed. Cir. 2019)) (emphasis removed). Valtrus implies its inventors exercised such oversight. But Valtrus never

provided ***any*** evidence that its inventors exercised ***any*** oversight over their attorneys after they signed the application. In stark contrast, the *Arctic Cat* inventor submitted emails demonstrating his oversight of the third party to whom he sent his invention for testing. 919 F.3d at 1332 ("Mr. Janisch pressed for progress," and "asked with apparent urgency about getting supplies….").

Valtrus argues Google has forfeited the opportunity to dispute Valtrus's new diligent-oversight argument. RedBr. 30-31. But Valtrus never previously raised this argument and thus Google had no reason to dispute it. *See, generally* Appx2379-2381; Appx5691-5692. Regardless, Google ***did*** argue that Valtrus failed to provide an "explanation of *any* activity during [the August 8 to August 27] gap," which includes any alleged oversight by the inventors. Appx2990 (emphasis original); *see also* Appx6547-6548 (13:16-18, 14:13-15); Appx6395-6399.

Moreover, as the party bearing a burden of production to establish diligence, Valtrus needed to introduce evidence of any "diligent oversight" it sought to establish.[2] Valtrus failed to even raise this argument, let alone introduce any such evidence. Thus, Valtrus—not Google—has forfeited the ability to raise this new diligent-oversight argument on appeal. *Schwendimann v. Neenah, Inc.*, 82 F.4th

[2] The parties agree Valtrus had a burden of production to establish its antedating case, while Google had the ultimate burden of persuasion to prove unpatentability. Red Br. 23; BlueBr. 27.

1371, 1382-84 (Fed. Cir. 2023) (finding patent owner forfeited argument not presented before the Board).

In a similar vein, Valtrus cites evidence allegedly showing the patent's original assignee reduced the invention to practice with a product. RedBr. 31-32. The Board, however, explicitly said "we do not base our [antedating] decision" on this additional evidence. Appx14 n.5. Valtrus cannot ask this Court to affirm the Board's reduction-to-practice finding based on evidence the Board explicitly declined to consider. *Alacritech, Inc. v. Intel Corp.*, 966 F.3d 1367, 1372 (Fed. Cir. 2020) ("[It] is a fundamentally incorrect statement of the law" to suggest the Board's decision can be affirmed "so long as there is evidentiary support in the record, even if the support was not specifically cited by the Board."); *TQ Delta, LLC v. Cisco Sys., Inc.*, 942 F.3d 1352, 1358 n.4 (Fed. Cir. 2019) (refusing to consider evidence the Board "expressly declined to consider"). This is especially true where, as here, unresolved disputes regarding the evidence's veracity and relevance remain. Appx36 (denying Google's motion to exclude as "moot" because evidence was not relied on); Appx2977-2986; Appx6209-6213; Appx6221-6222; Appx6366-6394.

**2. The Board Relied on Pure Speculation to Explain Away the Gap of Inactivity.**

As Google explained (BlueBr. 37-38), the Board's finding that the law firm exercised reasonably continuous diligence is premised on speculation by Valtrus's technical witness, Dr. Cole, who is (**a**) not a lawyer, (**b**) has no personal knowledge

of law firm patent prosecution practices generally, and (**c**) has no personal knowledge as to the specific practices Cooley employed in prosecuting the ’704 patent. Such “[m]ere speculation is not substantial evidence.” *OSI Pharms.*, 939 F.3d at 1382 (quotation omitted).

In response, Valtrus claims Google’s argument is “divorced from the realities of how patent applications are processed, finalized and filed by law firms.” RedBr. 32. But Valtrus cites no evidence to corroborate Dr. Cole’s ***speculation*** that waiting nearly three weeks to file a signed application is reasonable. For example, Valtrus has introduced no corroborating testimony from the Cooley attorney(s) who actually prosecuted the patent, or even from an attorney at Cooley or elsewhere who is familiar with patent prosecution more generally. As it did before the Board, Valtrus simply asks the Court to surmise that the delay was reasonable, “but mere surmise cannot take the place of proof.” *In re Meyer Mfg. Corp*., 411 F. App’x 316, 319-20 (Fed. Cir. 2010).

Valtrus’s reliance on the “realities” of patent prosecution rather than concrete evidence is also a double-edged sword. If it is reasonable to speculate that the law firm prosecuting the ’704 patent was diligently working on the patent application for several weeks, then that same speculation should also apply to the firm prosecuting the Bushee reference. Allowing patentees like Valtrus to cut the priority line with mere speculation unfairly penalizes third-party inventors who were first to file. This

is why the Court requires proof of diligence, not mere speculation any patentee could conjure after the fact.

To cobble together "proof" that the law firm was diligent, Valtrus simply offers more speculation (none of which was cited by the Board). For example, Valtrus speculates "***perhaps***" it took "several days" for the law firm to receive the inventors' signatures because one of the inventor's residence was listed as Toronto. RedBr. 33. But this is speculation. ***Perhaps*** the inventors faxed their signatures or ***perhaps*** the inventors visited the law firm's offices (or vice-versa) or ***perhaps*** the Canadian-inventor, while having a Canadian residence, lived in California during his internship with Verity. There is no way of determining which plausible story is right because Valtrus introduced no evidence on the issue.

Based on a document notation in the prosecution history, Valtrus also speculates the law firm drafted a transmittal sheet and non-publication request on August 24, 2001, which was the Friday before the application was filed on Monday August 27, 2001. RedBr. 33-34. But even if the Court accepted this speculation, it only confirms the law firm took ***no steps*** toward formally filing the application until the Friday before it was actually filed. Put simply, how is waiting more than two weeks to draft a simple transmittal sheet and non-publication request proof of ***continuous*** diligence?

Citing the same transmittal sheet, Valtrus also speculates it took the law firm time to count the claims and to write a check. RedBr. 34. That Valtrus suggests counting claims and writing checks takes more than an insignificant amount of time highlights Valtrus's lack of evidence of actual diligence. It is eminently more plausible the law firm counted the claims and wrote the check when it completed the transmittal sheet, which Valtrus speculates occurred on August 24, leaving August 8 to August 23 still entirely unaccounted for (this is why evidence, not speculation, is required). Regardless, Valtrus never argued before the Board that counting claims or generating a check was evidence of diligence. Appx2379-2381; Appx5691-5692; *compare* RedBr. 35 *with* Appx6447. Valtrus has forfeited this argument. *In re Google Tech.*, 980 F.3d. 858, 863 (Fed. Cir. 2020).

Finally, Valtrus tries to rehabilitate Dr. Cole's speculative testimony that law firms take weeks to prepare an application. RedBr. 35-36; Appx2494-2495 (¶55). But, as Google explained, Dr. Cole is not a lawyer, much less the lawyer who prosecuted Valtrus's patent. BlueBr. 37. Moreover, his speculative testimony only goes to how long it takes to ***draft*** an application, not to file one that has been approved and signed. *Id.*

In response, Valtrus offers the *non sequitur* that Dr. Cole's "testimony reflects his own experience" on the subject. RedBr. 35. That is Google's point—he has ***no*** relevant experience regarding how long a firm reasonably takes to file a signed

application. Valtrus points to Dr. Cole's role as a CTO to bolster his testimony (RedBr. 36), but despite previously having that title Dr. Cole expressly disclaimed having knowledge of the "process or reason or logic behind why lawyers would do certain things" when prosecuting patents. Appx3293-3295 (96:17-98:25).

Valtrus concludes its defense of the sparse evidentiary record developed before the Board by quoting *D'Amico v. Koike*, 347 F.2d 867, 871 (C.C.P.A. 1965) for the proposition that "courts should be somewhat liberal in determination of diligence of attorneys and of their clerical and stenographical staffs." RedBr. 36-37. What Valtrus tellingly ignores is the ***very next sentence*** in *D'Amico*: "Nevertheless we think that appellant is attempting to use those principles ***as substitutes for record evidence, of which there is very little***." *Id.*

The *D'Amico* decision highlights the flaw in Valtrus's diligence case. The *D'Amico* inventor—like Valtrus—argued his attorneys must have engaged in ***some*** activity in a two-month period of time during which the "draft form" of an application was finalized and sent to the inventor for signature. *Id.* at 870 ("The gist of appellant's arguments seems to be that…somebody obviously did [work on the application] sometime during [the disputed] period, otherwise the application would not have been filed."). Unlike Valtrus, however, the *D'Amico* inventor submitted affidavits from attorneys ***personally involved*** in the prosecution of the patent who testified as to what activities they recalled performing (or would have typically

performed) during the critical period. *Id.* But even that testimonial evidence was not enough to establish diligence.

*D'Amico* identified numerous facts relevant to determining whether an attorney was reasonably diligent in finalizing an application such as "workload and availability of the attorney," "procedure and policy in reviewing the application," or the "number of people involved." *Id.* at 871. And while evidence regarding each fact may not be necessary, the Court observed it knew "essentially nothing about the handling of the application" other than that at some point during the two-month critical period, the application was approved by an in-house lawyer and that other finalization work, including preparing formal papers was performed. *Id.*

Given this lack of evidence, the Court explained "[t]here is no end to the inferences which might be drawn from the scanty record before us" and that "it is certainly ***possible*** that…the application lay idle for nearly one month." *Id.* "[T]he record," the Court explained, "contains no evidence, even of the weakest sort, whether in [that month] anything occurred." *Id.*

Far from supporting Valtrus, the *D'Amico* decision demonstrates why reversal of the Board's reduction-to-practice finding is required. Just like the *D'Amico* inventor, Valtrus created a record before the Board that contains no evidence whether anything occurred between August 8, 2021 when the last inventor signed his declaration and (at best) August 24, 2021 when the law firm allegedly prepared

the final transmission papers. And like *D'Amico*, it is certainly ***possible*** the signed application "lay idle" for an extended period, thereby dooming Valtrus's diligence showing.

**3. Valtrus Failed to Distinguish Google's Cases.**

Valtrus says "Google's case citations do not support its position" (RedBr. 37), but Valtrus failed to distinguish those cases.

To start, Valtrus does not dispute Google's explanation that the facts in the principal case upon which the Board relied—*Perfect Surgical Techs., Inc. v. Olympus Am., Inc.*, 841 F.3d 1004 (Fed. Cir. 2016)—are readily distinguishable from the facts in this case. BlueBr. 35-37; Appx20-22. Valtrus quotes *Perfect Surgical* several times (*e.g.*, RedBr. 30, 36-37), but it never tries to explain how Valtrus's lack of evidence is remotely similar to the abundance of evidence provided in *Perfect Surgical*, which included a declaration by the prosecution attorney, his billing records, and letters between the attorney and inventor.

As for *In re Mulder*, 716 F.2d 1542 (Fed. Cir. 1983), Valtrus observes that the case involved a Rule 131 declaration which requires showing diligence from the date of conception rather than the date just before the prior art being antedated. RedBr. 37-38. However, Valtrus concedes the Court actually applied a more liberal standard, requiring only that diligence be shown during a critical two-day period. RedBr. 38.

Despite this concession, Valtrus confusingly says "the Court did not need to address the significant (or insignificance) of inactivity during the two-day period." RedBr. 38. But that is precisely what the Court did. *Mulder*, 716 F.2d at 1545 ("[L]iberality cannot be extended to the point of eliminating all proof of diligence, ***no matter how short the period to be covered***."). The lack of proof of any diligence during the two-day critical period was fatal in *Mulder*. The additional lack of diligence before and after the critical period might have given the Court added support for its diligence finding, but it was not necessary given the complete lack of evidence during the critical period.

Valtrus also says its diligence case is distinguishable from *Mulder* because Valtrus introduced evidence of at least some activity during the critical period. RedBr. 38-39. Yet, this evidence merely established that the application was ready to be filed as of August 8 but then, inexplicably, was not filed for nearly three weeks. Like the *Mulder* inventor, Valtrus provided no ***proof*** of diligence during a critical gap in the timeline.

Turning to *Meyer*, Valtrus argues the inventor affidavits in *Meyer* were less probative than the document notations Valtrus found lurking in the prosecution history file. RedBr. 39-40. But at least the inventor affidavits in *Meyer* were from the ***inventors*** who had first-hand knowledge of their own diligence. 411 F. App'x at 318. Here, in contrast, Valtrus has no testimony from ***anyone*** with first-hand

knowledge as to what the inventors or their attorneys were doing during the critical period. Moreover, the *Meyer* inventors—like Valtrus—also relied on a "timeline of prosecution events," but this Court agreed with the Board's finding that this timeline was insufficient because it did not address what actions the inventors or their attorneys did during a two-month gap in the timeline. *Ex Parte Meyer Mfg. Corp.*, 2010 WL 200407, at *7-8 (PTAB Jan. 10, 2010); *In re Meyer*, 411 F. App'x at 319.

Finally, Valtrus affirmatively cites *Gould v. Schawlow*, 363 F.2d 908 (C.C.P.A. 1966) for the proposition that some delay between when inventors sign an application and when the application is formally filed is "unavoidable." RedBr. 39-40. Yet the inventor in *Gould*—unlike Valtrus—submitted testimony from his patent attorney about their "joint activities" during the patent-prosecution process. *Gould*, 363 F.2d at 916-917. But even that evidence, as Valtrus notes (RedBr. 40 n.7), was not enough to establish diligence in *Gould* because there were insufficient "facts showing ***specifically*** what" diligence the inventor undertook "and when it was performed." *Id.* at 918.

**4. Valtrus Does Not Defend the Board's Improper Burden Shifting.**

In its opening brief, Google explained that the Board improperly faulted Google for not affirmatively establishing that the inventors had abandoned or unreasonably delayed filing their application. BlueBr. 40 (citing Appx22). Valtrus's response brief ignores this issue entirely.

Valtrus's antedating argument was "effectively an affirmative defense," placing the initial burden of production to establish diligence on Valtrus. *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1375-76 (Fed. Cir. 2016). Google therefore had no burden to prove the inventors abandoned or unreasonably delayed filing their application until Valtrus produced legally sufficient evidence establishing that there was no such abandonment or unreasonable delay. Instead of producing such evidence, however, Valtrus relied on legally ***insufficient*** evidence, *i.e.*, speculation and attorney argument.

As Valtrus failed to meet its burden of production with legally sufficient evidence, the burden never shifted back to Google to disprove Valtrus's claim of diligence. *Medtronic, Inc. v. Teleflex Innovations S.A.R.L.*, 68 F.4th 1298, 1303 (Fed. Cir. 2023) ("[W]hen a patent owner attempts to antedate an asserted prior art reference, the patent owner takes on a temporary burden of production. ***Once that burden is met***, the burden shifts back to the petitioner.") (internal citation omitted); *see also Purdue Pharma L.P. v. Iancu*, 767 F. App'x 918, 924 (Fed. Cir. 2019) ("[Patentee] never met its burden to show that the [patent] is entitled to claim the benefit of the [provisional application]. It was therefore not necessary for [petitioner] to offer expert evidence to the contrary."). The Board thus erred in faulting Google for not affirmatively establishing evidence of abandonment or unreasonable delay.

Other than noting that Google bore the ultimate burden of persuasion (RedBr. 23), Valtrus never defends the Board's decision to fault Google for not affirmatively establishing abandonment or unreasonably delay. Google had no such burden. This error in the Board's decision further supports vacatur.

**5. Remand Is Unnecessary.**

In a footnote, Valtrus briefly argues that if the Court concludes the Board's diligence finding lacks substantial-evidence support, remand is nonetheless needed for the Board to consider Valtrus's "actual reduction to practice" argument as well as "additional evidence supporting diligence." RedBr. 40 n.8; *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) ("[A]rguments raised in footnotes are not preserved."). Valtrus is mistaken.

First, although Valtrus's patent owner response—when discussing conception—puzzlingly suggested claim 1 was actually reduced to practice in February 2000—*i.e.*, more than a year before the alleged conception[3]—Valtrus focused its briefing on a ***constructive*** reduction-to-practice theory and activities that occurred during patent prosecution. Appx2379-2381; Appx5681; Appx5691-5692. This was its focus at the oral hearing too. Appx6540 (6:4-6); Appx6546 (12:16-18); Appx6561 (27:13-18) (citing Appx2380); Appx6446-6448. Valtrus should not be

[3] If commercially sold, any such patent-embodying product would trigger the on-sale bar and anticipate the claims.

afforded remand to advance an argument it never "clearly made" before the Board. *Netflix, Inc. v. DivX*, 84 F.4th 1371, 1377 (Fed. Cir. 2023); *MCM Portfolio LLC v. Hewlett-Packard Co.*, 812 F.3d 1284, 1294 n.3 (Fed. Cir. 2015).

Second, Valtrus never cited its "additional evidence" as evidence supporting its constructive reduction-to-practice theory.[4] Instead, Valtrus relied exclusively on the document notations in the prosecution history record as well as Dr. Cole's testimony. Appx2379-2381; Appx5691-5692; Appx6446-6448. Valtrus thus has forfeited the opportunity to rely on the "additional evidence" to support a constructive reduction-to-practice theory. *Schwendimann*, 82 F.4th at 1383-84.

***

Given the flaws in the Board's reduction-to-practice finding, the Court should reverse the Board's decision, instruct the Board that Google has proven Bushee is prior art, and remand for the Board to consider the parties' remaining disputes regarding the merits of Google's petition.

### B. Valtrus's Evidence of Conception is Insufficient As a Matter of Law.

This Court has long held that an inventor's testimony regarding conception must be corroborated with ***independent*** evidence. BlueBr. 42-45. This is why an inventor's unwitnessed lab notebook has never been found to be sufficient alone to corroborate an inventor's testimony. Because the Disclosure Documents are no

[4] Valtrus cited the additional evidence for conception. Appx2370-2377.

different than an unwitnessed lab notebook, the Board's finding that the Disclosure Documents are sufficient alone to corroborate Dr. Tsaparas's conception testimony is contrary to this Court's precedent and must be vacated.

Valtrus does not genuinely dispute Google's understanding of the law, and instead advances two meritless arguments.

First, Valtrus misleadingly conflates this Court's explanation that documents are self-corroborating with this Court's distinct requirement that ***independent*** evidence must be used to corroborate an inventor's testimony. RedBr. 41-43. Whether the Disclosure Documents are self-corroborating (or authentic) is not the issue, the issue is whether that evidence is independent of Dr. Tsaparas—it is not. This lack of independent evidence is the legal flaw in the Board's conception finding.

Second, Valtrus argues even if Google is right that the Disclosure Documents themselves are not independent, the metadata allegedly contained within those documents is independent. RedBr. 44-52. Valtrus failed to timely raise this argument below and thus forfeited the opportunity to raise it on appeal. Regardless, the argument is not supported by the case law (as Valtrus is unable to point to any precedential cases suggesting metadata should be treated as "independent" evidence) or the record (which confirms that ***only*** Dr. Tsaparas had access to the metadata

thereby making its relevance entirely ***dependent*** on his testimony). Simply put, inventor-controlled metadata is not independent evidence.

### 1. Valtrus Improperly Conflates Self-Corroboration with Independence.

Valtrus claims Google is challenging the Board's conception finding as "lack[ing] necessary corroboration." RedBr. 41. But Valtrus misunderstands what form of corroboration is lacking.

Google does not dispute that "documentary and physical evidence do not require 'corroboration.'" *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1170 (Fed. Cir. 2006). But this "maxim" is not relevant to whether conception can be proven without independent evidence. Indeed, *Medichem* makes clear that "***independent*** knowledge remains key to the corroboration inquiry." *Id.* at 1170.

Accordingly, even though a party's "physical evidence, such as [an inventor's] notebooks and autoradiographs, do not require corroboration to demonstrate the content of the physical evidence itself," that physical evidence "***may not single-handedly corroborate [the inventor's] testimony***." *Brown v. Barbacid*, 276 F.3d 1327, 1335 (Fed. Cir. 2002). Instead "an inventor's testimonial assertions of inventive facts require corroboration by ***independent*** evidence." *Id.* Thus, just like other inventor-dependent documents (*e.g.* unwitnessed lab notebooks) the Disclosure Documents cannot legally corroborate an inventor's conception testimony ***by themselves***. Some form of ***independent*** evidence is needed.

The corroboration cases cited by Valtrus (RedBr. 42) do not hold otherwise as in each, independent evidence corroborated the inventor's testimony. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1578-79 (Fed. Cir. 1996) (testimony and letters from third parties); *Price v. Symsek*, 988 F.2d 1187, 1195-96 (Fed. Cir. 1993) (secretary testified that she had seen drawing of invention); *Sandt Tech., Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1351 (Fed. Cir. 2001) (third-party affidavit that invention had been demonstrated).

Tellingly, Valtrus fails to identify a ***single*** case in which this Court found conception without at least some source of evidence independent of the inventor. Instead, Valtrus cites cases in which conception was corroborated by evidence clearly independent from the inventor in addition to "documents provided by the inventor." RedBr. 44.

For example, Valtrus emphasizes the fact that *DuPont* involved an inventor's own emails. RedBr. 44. But what Valtrus ignores is that this Court did not find conception ***solely*** corroborated by the inventor's emails, but instead also credited "[i]nternal DuPont documents" and "[p]roduct data sheets" as well as "[o]ther documentary evidence [that] showed [the inventor] developed and tested" the invention. *E.I. du Pont de Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060, 1076-77 (Fed. Cir. 2019). *DuPont* involved ***independent*** evidence beyond the inventor's own email, and such independent evidence is missing in this case.

Likewise, in *REG Synthetic*, the exhibits found sufficient to "corroborate [the inventor's] conception" were not, as Valtrus claims, simply "three emails sent by the inventor" (RedBr. 44) but instead included emails ***from*** third parties, which are clearly independent evidentiary sources. *REG Synthetic Fuels, LLC v. Neste Oil Oyj*, 841 F.3d 954, 962-64 (Fed. Cir. 2016).

Nor does *NFC Tech.* support Valtrus's position as the corroborating "PCB layout" document was generated—not by an inventor or his co-inventor(s)—but by a third party as was the corroborating "cover sheet" sent ***to*** the inventor. *NFC Tech., LLC v. Matal*, 871 F.3d 1367, 1372-1373 (Fed. Cir. 2017). Similarly, Valtrus's attempt to analogize to the dicta in *Mosaic Brands* fails as the evidence there included invoices presumably generated by the inventor's company and sent to third parties. *Mosaic Brands, Inc. v. Ridge Wallet LLC*, 55 F.4th 1354, 1364 (Fed. Cir. 2022).

Not only did each of these cases involve evidence independent of the inventors, but in each, the corroborating evidence demonstrated disclosure to third parties. Such disclosure is a key to providing independent evidence sufficient to demonstrate conception. *Kistler v. Weber*, 412 F.2d 280, 284 (C.C.P.A. 1969); BlueBr. 44-45. In sharp contrast, there is no evidence the Disclosure Documents were ever disclosed to any third parties, and only Dr. Tsaparas could access them for the past two decades. Appx3608-3613 (11:11-16:24).

In short, the self-corroborating nature of documentary evidence does not supersede this Court's long-standing precedent that "when a party seeks to prove conception through an inventor's testimony the party must proffer evidence, '***in addition to*** [the inventor's] own statements and documents,' corroborating the inventor's testimony." *Apator Miitors ApS v. Kamstrup A/S*, 887 F.3d 1293, 1295 (Fed. Cir. 2018) (quoting *Hahn v. Wong*, 892 F.2d 1028, 1032 (Fed. Cir. 1989)); *Proctor & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 999 (Fed. Cir. 2009) (same). This is why an inventor's own "unwitnessed laboratory notebook ***alone***, cannot corroborate [the] inventor's testimony of conception." *Apator*, 887 F.3d at 1297; *see also* BlueBr. 46-47 (citing cases).

For the same reasons, Valtrus's repeated suggestion that Google is belatedly challenging the Disclosure Documents' authenticity (or that of their allegedly associated metadata) is also irrelevant. *See, e.g.*, RedBr. 3, 21, 43. Even if authentic, the Disclosure Documents (and metadata) are not ***independent*** sources of evidence and thus they cannot alone corroborate Dr. Tsaparas's conception testimony. *Medichem*, 437 F.3d at 1171-72 ("Even the most credible inventor testimony is *a fortiori* required to be corroborated by ***independent*** evidence….").

Valtrus's suggestion that Google should have challenged the authenticity of the metadata but did not (RedBr. 3, 9, 22-23, 42-43, 49, 56 n.11) is also wrong. Google objected to the Disclosure Documents and alleged metadata on multiple

grounds, including that Valtrus had not established their authenticity, and Google later moved to exclude them under the best evidence rule. Appx2902-2903; Appx6219-6221.

Valtrus's argument also ignores the parties' respective burdens. It was Valtrus who needed to come forward with legally sufficient (*i.e.*, independent) evidence of conception, and thus it is "no answer" that Valtrus's legally insufficient evidence is allegedly "unrebutted." *Apator*, 887 F.3d at 1295. And Valtrus's repeated claims that Google avoided questioning Dr. Cole regarding the metadata (RedBr. 3, 49, 60), is simply not true—Google did ask such questions and Dr. Cole testified that he did ***not*** Sealed Deposition Testimony [redacted] the metadata. Appx3247 (50:4-10).

**2. The Alleged Metadata is Not Independent Evidence.**

Valtrus does not dispute "unwitnessed lab notebooks [have] historically [been] found insufficient for corroboration." RedBr. 46 (citing BlueBr. 45-48). Instead, Valtrus contends the screenshots of alleged metadata created by Dr. Tsaparas for documents solely within his control are akin to an independent observer witnessing the Disclosure Documents thereby distinguishing those documents from unwitnessed lab notebooks. *Id.* This argument is forfeited and wrong.

### a. Valtrus Forfeited Its Argument That Metadata Is An Independent Source of Evidence.

Although Valtrus's argument that metadata is an independent source of corroboration is found nowhere in Valtrus's patent owner response, Valtrus nevertheless contends it raised the argument before the Board.

Specifically, Valtrus contends it raised this argument in its sur-reply brief, but even there Valtrus can only argue the argument was raised "by implication." RedBr. 50, n. 9. However, as seen below, the cited portion of the sur-reply brief does not raise the argument, by implication or otherwise:

> Google attempts to discredit Dr. Tsaparas' declaration based on the Disclosure date, but Google cross-examined Dr. Tsaparas and chose to avoid questions relating to the document metadata, which Dr. Cole independently confirmed.

Appx5683.

It was not until the oral hearing before the Board that Valtrus briefly raised this argument (Appx6553-6554 (19:9-20:7)), and that is too late under both the Board's rules and this Court's precedent. *Dell Inc. v. Acceleron, LLC*, 884 F.3d 1364, 1369 (Fed. Cir. 2018) ("[T]he Board [is] obligated to dismiss [a party's] untimely argument…raised for the first time during oral argument."); Trial Practice Guide, 77 Fed. Reg. 48,756, 48,768 (Aug. 14, 2012).

That the Board did not excuse Valtrus's untimeliness is clear from its decision where this argument is not mentioned at all. The Board merely ruled that the

Disclosure Documents and alleged metadata were "separate corroboration" of Dr. Tsaparas's testimony, but never considered whether they were "independent." Appx18; *see Cablz, Inc. v. Chums, Inc.*, 708 F. App'x 1006, 1012 (Fed. Cir. 2017) (finding waiver where a party's "failure to brief the issue prior to the IPR oral hearing caused the Board to not explicitly address" the argument). But separate corroboration—*i.e.* evidence that is separate or distinct from the inventor's testimony like a physical lab notebook—is not what is required. What is required is ***independent*** corroboration, which is evidence "in addition to [the inventor's] own statements and ***documents***." *Hahn*, 892 F.2d at 1032.

Valtrus cannot shift the blame to Google for Valtrus's failure to timely raise this argument as it was ***Valtrus's burden*** to provide independent evidence corroborating Dr. Tsaparas's testimony. Regardless, Google's reply brief before the Board argued that "[t]here is no ***independent***, corroborating evidence for the dates [Dr. Tsaparas] alleges nor the contents of the [Disclosure Documents]." Appx2988-2989. Valtrus could have attempted to rebut this argument by claiming in its sur-reply that the alleged metadata provided such independent, corroborating evidence, but it chose not to. Instead, Valtrus focused on other evidence—evidence the Board explicitly declined to consider (Appx14 n.5)—as allegedly providing independent sources of corroboration for Dr. Tsaparas's testimony. Appx5682-5684.

### b. The Alleged Metadata is Not Independent Evidence as Its Evidentiary Value Relies on Dr. Tsaparas's Testimony.

Valtrus argues "independent evidence" can be "included in documents provided by the inventor." RedBr. 44. Google does not disagree; the mere fact that an inventor (or his co-inventor) is the one who produces otherwise independent evidence—*e.g.*, emails or documents from third parties—does not eliminate the evidence's independent nature. This is consistent with the cases that Valtrus cites (RedBr. 44-45) which involved an inventor producing otherwise independent evidence like third-party emails. *Supra* pp. 20-21 (discussing Valtrus's cases).

Google's argument is not that the alleged screenshots of metadata lack independence because Dr. Tsaparas produced them. Rather the alleged metadata is not "independent" because the metadata's evidentiary value depends ***entirely*** on Dr. Tsaparas's testimony. BlueBr. 49-52, 57. To be "independent," corroborating evidence must not be "based upon facts the truth of which depends upon information received from the inventor." *Thurston v. Wulff*, 164 F.2d 612, 617 (C.C.P.A. 1947). Thus, even testimony from a third party, is insufficient to corroborate an inventor's testimony if the witness's knowledge derives solely from the inventor.

For example, in *Frilette*, an employee's testimony and notebook were insufficient to corroborate an inventor because the employee had no independent knowledge of the material contained in bottles he tested. *Frilette v. Kimberlin*, 412 F.2d 1390, 1395-1396 (C.C.P.A. 1969). As this Court noted, "the dispositive fact"

in *Frilette* was "that [the employee's] ***only*** information regarding the material was the writing on the label that was apparently affixed to the bottle by [the inventor], the very person whose statements required corroboration by [the employee]." *Shu-Hui Chen v. Bouchard*, 347 F.3d 1299, 1310-11 (Fed. Cir. 2003) (emphasis in original). This created the same "catch-22 of corroboration" discussed in *Apator*, which held that evidence cannot corroborate an inventor's testimony when the evidence itself "can only provide that corroboration with help from" the inventor's testimony. 887 F.3d at 1296-97.

In similar fashion, the alleged metadata is not evidence that is "independent" of Dr. Tsaparas as its only evidentiary value is "based upon facts the truth of which depends upon information received from" him. *Thurston*, 164 F.2d at 617. For example, only Dr. Tsaparas's testimony links the alleged metadata screenshots to the two documents attached to his declaration. Appx6260 (¶4) (explaining how he purportedly generated the screenshots). Contrary to Valtrus's assertion that "Dr. Cole independently reviewed the invention disclosures ***and metadata***," Dr. Cole admitted in his deposition that he did ***not*** Sealed Deposition Testimony [redacted] the metadata. RedBr. 49 (emphasis in original); Appx3247 (50:4-10). Put simply, ***no one*** (and

nothing) connects the metadata to the Disclosure Documents other than Dr. Tsaparas, and ***no one*** has independently verified the metadata's accuracy.[5]

In fact, there is nothing, apart from Dr. Tsaparas's own testimony, that suggests the screenshots show the metadata of the Disclosure Documents and not the metadata for some other similarly named documents. And even if the screenshots were at some point in time an accurate representation of the metadata for the Disclosure Documents, there is no indication, other than Dr. Tsaparas's testimony, that the Disclosure Documents were not edited (*e.g.*, to add relevant disclosures) after the screenshots were taken.

This parallels *Apator*, where the inventor attempted to date several files by claiming they were attached to emails. 887 F.3d at 1296-97. But as the emails themselves did not indicate what files had been attached, only the inventor's uncorroborated testimony linked the files to those emails, negating any corroborative value they could provide. *Id.* Similarly, Dr. Tsaparas attempts to date the Disclosure Documents with the screenshots, but only his testimony links the two together. Appx6260 (¶4). Valtrus's attempt to distinguish *Apator* thus fails as it assumes, without support, that the screenshots do in fact correspond to the Disclosure Documents. RedBr. 53-54.

---

[5] Even Dr. Tsaparas conceded he had no independent recollection of the metadata-related dates apart from the metadata itself thereby undermining his ability to credibly verify the metadata's accuracy. Appx3615 (18:3-11).

Dr. Tsaparas created the screenshots of the alleged metadata, and the screenshots can prove nothing without his corresponding testimony that they accurately depict the date and authorship of the Disclosure Documents. Appx6260-6261 (¶¶4-5). As such, the Disclosure Documents are the modern equivalent of unwitnessed laboratory notebooks and are not independent evidence sufficient to corroborate Dr. Tsaparas's testimony.

#### c. "Document Metadata" Is Not Inherently More Reliable Than "System Metadata."

While ultimately irrelevant (as it has no bearing on whether Valtrus proffered ***independent*** evidence), Valtrus's attempt to distinguish between "document" and "system" metadata as having different measures of reliability is unsupported.

Only Google's expert testified regarding document metadata's reliability, and he said that document metadata is easily changed and can be "manipulated by software." Appx6161-6165 (87:25-91:14). Google cited this testimony in its opening brief (BlueBr. 19, 57), but Valtrus pointedly ignored it when arguing "Google failed to introduce any evidence that…document metadata is unreliable." RedBr. 22. And while Valtrus's own expert explained system metadata is also unreliable, he never suggested document metadata was somehow more reliable. Appx3566-3568 (66:12-68:5).

Likewise, "Digital Forensics for Legal Professionals" never says one category of metadata is more reliable.[6] *See* RedBr. 47-48. Instead, it cautions against blind use of metadata, regardless of type, noting that metadata "is rarely enough to 'prove' something." Appx6062. And whether ***system*** metadata "is easily misinterpreted" or "difficult to understand" says nothing about ***document*** metadata's ***reliability***. Appx6062-6063; RedBr. 47.

Nor do Valtrus's cited cases suggest document metadata is a gold standard of reliability. And certainly, none of them (apart from a lone PTAB decision) found metadata "independent" evidence, let alone the ***only*** independent evidence sufficient to corroborate conception. For example, in *Dana-Farber*, "hundreds of documents [and] testimony from a number of independent witnesses" corroborated the inventors' testimony. *Dana-Farber Cancer Insts., Inc. v. Ono Pharm. Co.*, 379 F.Supp.3d 53, 86 (D. Mass. 2019). Likewise, in *ATI*, "'almost 1300' pages of documentary records" provided sufficient corroboration. *ATI Techs. ULC v. Iancu*, 920 F.3d 1362, 1370-71 (Fed. Cir. 2019).

In contrast, Valtrus is unable to meaningfully distinguish the cases Google cited (BlueBr. 56-57) that found metadata unreliable and insufficient to corroborate inventor testimony. For example, Valtrus's criticism that the *EMC* inventor had

[6] Google moved to exclude this book (Exhibit 2062), but the Board found Google's motion moot because the Board's decision did not rely on the book. Appx36.

control over the metadata (RedBr. 50) underscores *EMC*'s applicability because the alleged metadata in this case was controlled by Dr. Tsaparas. Likewise, that the *Kenexa* inventor "had the ability to modify" the metadata at issue and that the patent owner's expert in *Tracktime*"failed to address" metadata's reliability also mirrors this case, where (**i**) only the inventor had access to (and thus the ability to modify) the alleged metadata and (**ii**) the only expert testimony regarding document metadata is that such metadata is unreliable and easily modified. RedBr. 51-52; Appx6161-6165 (87:25-91:14).

Additionally, *Transocean* found the drawings at issue (including their "Last Modified Date" metadata) were "unwitnessed documentation" insufficient to corroborate the conception date. *Transocean Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp.*, 443 F.Supp.2d 836, 856 (S.D. Tex. 2006). Thus, regardless of other evidentiary deficiencies, *Transocean* is an example of a court finding metadata not inherently independent.

Accordingly, there is no support for Valtrus's theory that document metadata is more reliable than system metadata. But again, this is irrelevant as the metadata's reliability has no bearing on whether it is ***independent*** evidence—it is not as the inventor himself created the screenshots allegedly showing the metadata.

### 3. This Court Cannot Affirm Based On Evidence The Board Declined to Consider.

Valtrus discusses "additional" evidence that purportedly corroborates conception. RedBr. 56-68. But Valtrus concedes "[t]he Board did not consider this additional evidence" in reaching its finding. RedBr. 56.

Because the Board expressly declined to consider this evidence, this Court should not consider the evidence in the first instance on appeal. *Alacritech, Inc*, 966 F.3d at 1372; *In re Stepan Co.*, 868 F.3d 1342, 1347 (Fed. Cir. 2017). This is especially true where Google disputed Valtrus's "additional" evidence before the Board, and the Board did not resolve that dispute. Appx36 (denying as moot Google's motion to exclude various exhibits "related to arguments based on the Verity®K2 product"); Appx2977-2986; Appx6206-6222. Remand is necessary for the Board to consider this "additional" evidence.

### 4. Valtrus Never Satisfied Its Burden of Production to Provide Independent Corroborating Evidence.

Valtrus concludes its brief by listing evidence it introduced before the Board and arguing it "easily cleared its burden of production to show prior conception." RedBr. 59. Valtrus then argues Google failed to rebut Valtrus's evidence with evidence of its own. RedBr. 59-60. Valtrus's attempt to shift the burden of production to Google fails.

Valtrus's argument assumes the evidence Valtrus introduced and which the Board actually relied on (*i.e.*, the Disclosure Documents and metadata) was legally sufficient to meet its burden of production for conception, but that evidence was not because it ***lacked independence***. Valtrus's burden of production plainly cannot be satisfied with evidence that is insufficient as a matter of law. *Supra* p.15. Thus, the burden of production ***never*** shifted back to Google.

## CONCLUSION

Neither the Board's reduction-to-practice finding nor its conception finding has substantial-evidence support. The Board's decision should be vacated in view of either of these errors.

Respectfully submitted,

Date: March 10, 2025

*/s/ Nathan R. Speed*

Nathan R. Speed
Richard F. Giunta
Adam R. Wichman
John W. Custer
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
BOSTON, MA 02210

*Counsel for Appellant Google LLC*

## CERTIFICATE OF COMPLIANCE

I, Nathan R. Speed, counsel for Appellant, certify that the foregoing brief complies with the type-volume limitation set forth in Fed. Cir. Rule 32(a). Specifically, this brief contains 6,996 words (excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2)) as determined by the word count feature of the word processing program used to create this brief.

I further certify that the foregoing brief complies with the typeface requirements set forth in Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). Specifically, this brief has been prepared using a proportionally spaced typeface using Microsoft Word 365, in 14-point Times New Roman font.

Date: March 10, 2025

*/s/ Nathan R. Speed*

Nathan R. Speed
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
BOSTON, MA 02210

*Counsel for Appellant Google LLC*

## CERTIFICATE OF SERVICE AND FILING

I hereby certify that a true and correct copy of the foregoing **Reply Brief of Appellant Google LLC (confidential and non-confidential versions)** has been electronically filed with the Clerk of Court using the CM/ECF system, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including principal counsel for Appellee.

Additionally, confidential copies will be served via e-mail only to counsel for Appellee on this 10th day of March 2025. Counsel for Appellee has consented in writing to electronic service via e-mail pursuant to Fed. R. App. P. 25(c)(2) and Fed. Cir. R. 25(e)(4).

Date: March 10, 2025

*/s/ Nathan R. Speed*

Nathan R. Speed
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
BOSTON, MA 02210

*Counsel for Appellant Google LLC.*